**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NALEX ENERGY, LLC** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | **Civ. No. 4:22-cv-01824** |
| **LAURITZEN BULKERS A/S,** | § | **FED. R. CIV. P. 9(h)** |
| **J. LAURITZEN (U.S.A.), INC.,** | § | **Admiralty Claim** |
| **J. LAURITZEN A/S AND** | § | |
| **DEAL ENERGY A/S** | § | |
| **Defendants.** | § | |

**DEFENDANT LAURITZEN BULKERS A/S' ANSWER**
**TO THE VERIFIED ORIGINAL COMPLAINT AND**
**COUNTERCLAIM**

Defendant Lauritzen Bulkers A/S ("Lauritzen")[1] in answer to the Verified Original Complaint (the "Complaint") respectfully would show the Court as follows.

**Jurisdiction and Venue**

1.      Admits the allegations contained in paragraph 1 of the Complaint.

2.      Admits that venue for this civil action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in answer to paragraph 2 of the Complaint.

**Parties**

3.      Admits the allegations contained in paragraph 3 of the Complaint.

4.      In response to paragraph 4 of the Complaint, admits that defendant Lauritzen is a foreign business entity organized under the laws of Denmark and located at 15 Tuborg Havnevej 2900 Hellerup, Denmark, that Defendant Lauritzen is engaged in business as a charterer and operator of bulk carriers which call at Texas ports, was the charterer of the M/V SHANGHAI at all times

---

[1] Plaintiff Nalex and Defendant Lauritzen are working on a stipulation that would dismiss the Verified Original Complaint against Defendants J. Lauritzen (U.S.A.), Inc., J. Lauritzen A/S, and Deal Energy A/S on a without prejudice basis. A Stipulation to that effect is being reviewed and the parties anticipate filing it with the Court shortly.

material to this Complaint, and procured the bunkers for which payment has been made by Defendant Lauritzen under protest and without prejudice, further that Defendant Lauritzen does not maintain a regular place of business or a designated agent upon whom service of process may be had, but except as so specifically admitted herein, denies the remaining allegations in paragraph 4 of the Complaint. Defendant Lauritzen has signed a waiver of service of process pursuant to Rule 4, Federal Rules of Civil Procedure and therefore, formal service of process on defendant is not required and the allegations regarding formal service of process need not be answered.  Since Defendant Deal Energy A/S has been or will be dismissed from the action on agreement of Plaintiff and Defendant Lauritzen, the allegations regarding Deal Energy A/S need not be answered.

5.      Defendants J. Lauritzen (U.S.A.), Inc. and J. Lauritzen A/S have been or will be dismissed from the action on agreement of Plaintiff and Defendant Lauritzen, the allegations regarding Defendants J. Lauritzen (U.S.A.), Inc. and J. Lauritzen A/S need not be answered.

### Factual Background

6.      Admits that Nalex brought this action to recover amounts allegedly due and owing to it under a maritime contract with Lauritzen for the supply of marine fuel oil (known in the marine industry as "bunkers") to the M/V SHANGHAI (IMO: 9220988) (hereinafter the "SHANGHAI" or "the Vessel"), but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 6 of the Complaint.

*Nalex and Lauritzen entered into a contract for the supply of bunkers.*

7.      Admits the allegations contained in paragraph 7 of the Complaint.

8.      Admits the allegations contained in paragraph 8 of the Complaint.

9.      Admits that Nalex's General Terms govern the parties' rights with respect to the subject bunker delivery, that section 1.2 of Nalex's General Terms defines the term "Buyer" to mean "the party and/or parties contracting to buy products and/or services as set out in the Seller's Confirmation

of Order for Products and/or Services, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable." Ex. 3, General Terms, p. 1, art 1.2, that the Confirmation Order provides that "Lauritzen Bulkers A/S" is the "buyer" for the subject sale of bunkers. Ex. 2, that pursuant to Section 7.14, Lauritzen also warranted that it had express authority from the Vessel's owner to purchase the bunkers. Ex. 3, General Terms, p. 1, art 7.14., but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 9 of the Complaint.

10. Admits that the Confirmation Order requires payment for the bunkers within 30 calendar days of delivery and provides for the accrual of interest on any late payment. Ex. 2, General Terms, p. 6, art 9.4, that Nalex's General Terms state that "[t]imely payment is of the essence. [Nalex] shall be absolutely entitled to the payment in full without discount, reduction, counterclaim or set off (whether legal or equitable)" *Id.*, art. 9.1, that Nalex's General Terms further provide that ".    Buyer shall not be entitled without Seller's consent in writing, to offset any amounts for claims against seller, whether or not these claims are connected, and whether or not they arise out of the contract." *Id.,* art. 9.2, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 10 of the Complaint.

### *Nalex supplies bunkers to the SHANGHAI*

11. Admits the allegations contained in paragraph 11 of the Complaint.

12. Denies knowledge or information sufficient to believe the truth of the matters asserted in paragraph 12 of the Complaint and therefore, denies the allegations contained in paragraph 12 of the Complaint.

13. Admits that a Marine Fuel Delivery Receipt (hereinafter "BDN") was signed by the Vessel's Chief Engineer and stamped with the seal of the Vessel acknowledging receipt of the subject bunkers. Ex. 4, Marine Fuel Delivery Receipt and that the BDN also provides the seal

numbers for the above-described fuel samples obtained, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 12 of the Complaint.

### *Lauritzen complains about the quality of the bunkers*

14. Admits that on April 30, 2022, Lauritzen advised Nalex that the Vessel's owners testing of the supplied bunkers shows cat fines above the tolerable limits of ISO 8217, that the Vessel owner's test results indicated that the aluminum and silicone levels, typically combined to determine the content level of cat fines, were above the tolerable amount of 60mg/kg, and that the sample tested by the Vessel's owners selected laboratory was collected from the Vessel's inlet manifold by continuous drip sample method, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 14 of the Complaint.

15. Denies knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 15 of the Complaint, but except as so denied, admits that Lauritzen requested a further testing of a bunker sample with a full ISO specification.

16. Admits that Lauritzen requested that Nalex suggest an independent laboratory that can complete joint testing of one of the representative samples indicated on the BDN and that Nalex responded to Lauritzen by proposing AmSpec, Camin Cargo, or Inspectorate as the laboratory to conduct final and binding testing of aluminum and silicone from a representative sample, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 16 of the Complaint.

17. Admits the allegations contained in paragraph 17 of the Complaint.

18. Admits that Section 5.4 of Nalex's General Terms provides in part: "*Where reasonably practical, the samples shall be taken in accordance with ISO-8217, but shall otherwise be taken at a point and in a manner chosen by Seller or its representative.*" See Ex. 3, and that

4

Paragraph 4 of ISO-8217 provides that "*samples for quality verification may be taken in any location agreed between the parties,*" but except as so specifically admitted herein, denies the remaining allegations in paragraph 18 of the Complaint.

19.     Denies the allegations contained in paragraph 19 of the Complaint.

20.     Denies the allegations contained in paragraph 20 of the Complaint and that Lauritzen agreed that the test results would be final and binding on the parties, but except as so denied herein, admits that Lauritzen advised, "*As to the test results being final and binding, we can deal with same as per the supply contract terms.*"

### *AmSpec's final and binding analysis confirms the bunkers are on-spec*

21.     Admits that upon receipt of AmSpec's analysis, Lauritzen advised Nalex that the Vessel would like to perform additional testing on the representative sample and also perform further testing of samples obtained from the vessel manifold, that Nalex rejected Lauritzen's proposal for additional testing, that Nalex reiterated that Amspec's analysis is final and binding on the parties, that Nalex rejected Lauritzen's proposal for additional testing, and that Nalex reiterated that AmSpec's analysis is final and binding on the parties, and advised Lauritzen that it considered the claim closed, but except as so specifically admitted herein, denies that AmSpec's analysis was final and binding on the parties and denies the remaining allegations contained paragraph 21 of the Complaint.

22.     Denies that AmSpec's analysis was final and binding on the parties and denies the allegations contained in paragraph 22 of the Complaint.

23.     Admits that section 5.6 of Nalex's General Terms provide that "*[u]nless otherwise agreed to in writing by Seller, only samples provided by Seller to Buyer at the time of delivery shall be deemed representative of the Product delivered,*" and that section 5.5 provides that "*[i]f . . . no agreement has been reached by the two parties, Seller reserves the right to have one its retained*

*sealed samples independently analyzed and for the results to be final and binding upon both parties,*" but except as so specifically admitted herein, denies that the AmSpec analysis was final and binding on the parties and denies the remaining allegations contained in paragraph 23 of the Complaint.

### *Lauritzen is in breach of its contract with Nalex*

24.     Admits that the purchase price of the subject bunkers was $249,804.58, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 24 of the Complaint.

25.     Admits that payment for the bunkers was duly demanded by Nalex, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 25 of the Complaint.  On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.


### Breach of Maritime Contract against Lauritzen

26.     Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

27.     Admits that Lauritzen and Nalex entered into a contract for the purchase and delivery of bunkers to its chartered vessel and that Nalex provided bunkers to the M/V SHANGHAI pursuant to the terms of the Confirmation Order and its General Terms, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 27 of the Complaint.  On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

### Unjust Enrichment/Quantum Meruit against Lauritzen

28.     Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

29.     Denies the allegations contained in paragraph 29 of the Complaint.  On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

30.     Denies the allegations contained in paragraph 30 of the Complaint.  On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

### Suit on Account against Lauritzen and Deal Energy

31.     Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

32.     Denies the allegations contained in paragraph 32 of the Complaint.  On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

33.     Denies the allegations contained in paragraph 33 of the Complaint.  On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

### Conditions Precedent

34.     Denies the allegations contained in paragraph 34 of the Complaint (improperly numbered 30 in the original Complaint).

### Reservation of Claims against the M/V SHANGHAI, *in rem*, pursuant to Rule C of the Supplemental Admiralty Rules

35.     Denies the allegations contained in paragraph 35 of the Complaint (improperly numbered 31 in the original Complaint).  On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.  Any

maritime lien that may have existed against the M/V SHANGHAI was extinguished by payment of the underlying debt upon which Nalex's claim is based.

## Waiver

36.     Denies the allegations contained in paragraph 36 of the Complaint (improperly numbered 32 in the original Complaint).

## FIRST AFFIRMATIVE DEFENSE

37.     The Complaint fails to state a claim upon which can be granted.

## SECOND AFFIRMATIVE DEFENSE

38.     Nalex's claim which is the subject of this action has been extinguished by payment of the claim by Lauritzen on or about July 28, 2022, under protest and without prejudice to any of its rights and/or defenses.

## LAURITZEN'S COUNTERCLAIM AGAINST NALEX

Defendant Lauritzen, as and for a Counterclaim against Plaintiff Nalex, alleges as follows:

39.     Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

40.     At the time the Nalex bunkers were supplied, the M/V SHANGHAI (the "Vessel") was under time charter to Lauritzen.  One of Lauritzen's obligations under the time charter was to purchase bunkers to operate the Vessel between the various ports for which it was chartered to carry cargo.

41.     In its Counterclaim, Lauritzen seeks compensation for the supply by Nalex of marine fuel oil (commonly referred to as "bunkers") to the Vessel that did not meet the contractual specification for two parameters, aluminum and silicon (together referred to a "catfines").

42.     The contractual specification for catfines is contained in the international standard ISO

8217:2017, which provides for a maximum permissible content for catfines (*i.e.*, aluminum + silicon) of 60 mg/kg.

43.     During the physical delivery of the bunkers from the Kirby Marine bunker barge 27735 via hose to the Vessel's bunker intake manifold, the Vessel took continuous drip samples of the bunkers.  Two of the continuous drip samples taken at the Vessel's bunker intake manifold on the date of delivery, April 25, 2022, were analyzed and indicated a catfines content far in excess of the maximum permissible by ISO 8217:2017 – 118 mg/kg (Intertek Lintec Fuel Quality Report – Ex. A attached) and 102 mg/kg (Intertek Caleb Brett – Ex. B attached) versus 60 mg/kg permitted by the ISO standard.  A third sample taken from bunker tank no. 3S after the bunkers supplied by Nalex had been taken on board the Vessel were analyzed and also indicated a catfines content well in excess of the maximum permissible – 99 mg/kg (Intertek Caleb Brett – Ex. C attached).  The analyses of these samples clearly show that the bunkers supplied by Nalex were off-specification for catfines by significant amounts.

44.     In its Complaint, Nalex relies on two laboratory analyses for the proposition that the bunkers supplied to the Vessel were on-specification because the catfines content was 17 ppm (AmSpec 5/2/22) for one of the bunker samples (seal # 1191919) from the Kirby Marine barge (Dkt. No. 1-7) and the catfines content was 34 ppm (Intertek Caleb Brett 5/5/22) for a second bunker sample (seal #1191918) from the Kirby barge (Dkt. No. 1-5).  Both of the results – 17 ppm and 34 ppm – were less than the 60 mg/kg maximum permitted under the ISO standard.

45.     In October 2022, bunker samples (seal # 0153995 and # 1191920) from the Kirby Marine barge were analyzed with the results of 31 ppm and 30 ppm respectively for catfine content (Exs. D and E).  These results were similarly less than the maximum permitted under the ISO standard.

46.     What the test results from all of these analyses indicate is that all four Kirby Marine

barge samples were found to be outside the reproducibility of the Vessel manifold drip samples, indicating that the barge samples were significantly different than the Vessel manifold samples in regard to catfine content.

47.     These analyses also showed that with the other parameters of the bunkers, based on Table 2 of the ISO standard, being comparable between the Vessel bunker manifold and barge external line samples, the barge external line bunker samples were underestimating the catfine content due to the manner in which the barge samples were drawn.  The significant difference in the catfine content between the Vessel manifold samples and barge samples was due to (a) the barge external line samples were likely spot samples (rather than continuous drip samples) and/or (b) the samples drawn from the barge external line were not mixed properly prior to sub-sampling.

48.     As a result, the bunkers that were actually received on the Vessel on April 25, 2022, were off-specification because they did not comply with the ISO standard agreed in the contract between Nalex and Lauritzen.  Therefore, Nalex has breached the warranty that the bunkers supplied would met the contractual specifications contained in the ISO standard.

49.     Since the bunkers supplied by Nalex were off-specification, the Vessel refused to use these bunkers as fuel for the Vessel's engines for fear of causing damage to the engines and other machinery aboard the Vessel.

50.     Inasmuch as the Vessel did not have sufficient bunkers on board to reach the next cargo port, the Vessel had to divert to Freetown, Bahamas and purchase replacement bunkers at a cost of $248,200.  The port costs of diverting the Vessel to Freetown to obtain replacement bunkers was approximately $50,000.  The Owners of the Vessel have sought to recover the cost of replacement bunkers and port costs from Lauritzen in a separate proceeding.

51.     Also, as a result of the Nalex bunkers being off-specification, Lauritzen was required

to retain marine surveyors and experts to determine the nature, cause, and extent of the off-specification bunkers. The cost of these marine surveyors and experts is currently approximately $15,000 and will increase as additional invoices for these services are received.

52.     Since the off-specification bunkers could not be used on board the Vessel as marine fuel, efforts were made in May 2022 to sell them in off-specification condition. No bunker or salvage company showed an interest taking in these bunkers, except for one who agreed to de-bunker the Vessel and take the off-specification bunkers for payment of $13,000 to do so. Thus, the bunkers supplied by Nalex had no value as off-specification bunkers. The Owners of the Vessel have sought to recover the $13,000 cost of de-bunkering the Nalex bunkers in a separate proceeding. In addition to the cost of de-bunkering, the Vessel also lost time during the course of de-bunkering and related time loss. The value of this lost time is $47,113.26 and Owners have claimed this amount from Lauritzen in a separate proceeding.

53.     Lauritzen is also entitled to damages for Nalex's breach of warranty under the contract to supply bunkers to the Vessel. The damages for breach of warranty by Nalex is the value of the bunkers as warranted in the contract less the value of the bunkers as off-specification. In this instance, the value of the bunkers as warranted would be $249,804.58, the price paid by Lauritzen, less the zero value as off-specification bunkers. Therefore, Lauritzen is entitled to $249,804.58 in damages from Nalex for breach of warranty on the sale of the bunkers to Lauritzen.

54.     In sum, Lauritzen seeks to recover the following sums from Nalex:

a.      $249,804.58 – see paragraph 53;

b.      $248,200 + $50,000 – see paragraph 50;

c.      $15,000 – see paragraph 51; and

d.      $13,000 + $47,113.26 – see paragraph 52.

**TOTAL**        **$623,117.84**

WHEREFORE, Defendant Lauritzen Bulkers A/S prays that:

a.        a judgment issue against Nalex and in favor of Lauritzen dismissing Nalex's Verified Original Complaint together with an award of costs and attorneys' fees in favor of Lauritzen;

b.        a judgment issue against Nalex and in favor of Lauritzen awarding Lauritzen $623,117.84 in damages on the Counterclaim plus interest, costs, and attorneys' fees; and

c.        the Court grant Lauritzen such other and further relief as it may see fit.

Dated: November 9, 2022

Respectfully submitted,

**Lyons & Flood, LLP**

As Attorneys for Defendant Lauritzen Bulkers A/S

*/s/ Kirk M. Lyons*
Kirk M. Lyons
Admitted Pro Hac Vice
The Towers, Suite 206
111 Great Neck Road
Great Neck, NY 11021
(212) 594-2400
klyons@lyons-flood.com

**<u>Certificate of Service</u>**

The foregoing Answer with Counterclaim was served on all counsel of record via the Court's ECF system on November 9, 2022.

*<u>/s/ Kirk M. Lyons</u>*
Kirk M. Lyons
