IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LAURITZEN BULKERS A/S,  §<br>   Defendant and Third-Party Plaintiff,  §<br>  §<br>VS.  §<br>  §     Civ. No. 4:22-cv-01824<br>KIRBY INLAND MARINE LP,  §<br>   Third-Party Defendant.  §     FED. R. CIV. P. 9(h)<br>  §     Admiralty Claim<br>  §<br>  § | |

**DEFENDANT AND THIRD-PARTY PLAINTIFF
LAURITZEN BULKERS A/S' THIRD-PARTY
COMPLAINT AGAINST KIRBY INLAND MARINE LP**

COMES NOW, Defendant and Third-Party Plaintiff Lauritzen Bulkers A/S ("Lauritzen") against Third-Party Defendant Kirby Inland Marine LP ("Kirby") and, pursuant to Rule 14 of the Federal Rules of Civil Procedure, respectfully would show the Court as follows:

1. Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein the allegations set forth in its Answer with Counterclaim filed against Plaintiff Nalex in this action. (Dkt. No. 14, a copy of which is attached as **Exhibit A**). Lauritzen further alleges:

**Jurisdiction and Venue**

2. This is an admiralty and maritime claim within the meaning of Rules 9(h) and 14(c) of the Federal Rules of Civil Procedure in that it involves a claim for a maritime tort. The case also falls within the Court's admiralty jurisdiction pursuant to 28 United States Code § 1333. Pendent or ancillary jurisdiction also lies on any non-federal claims as they arise out of the same transaction or occurrence or series of transactions or occurrences as the above claims.

3. Venue for this civil action is proper in this judicial district pursuant to 28 U.S.C. §

1

1391(b) because Plaintiff Nalex Energy, LLC and Third-Party Defendant Kirby Inland Marine LP are Texas corporations with principal places of business in or around Houston, Texas.

### Parties

4.     Upon information and belief, Plaintiff Nalex Energy, LLC ("Nalex") is a Texas limited liability company with its principal place of business in Houston, Texas and is engaged in the business of selling and/or supplying of marine fuels to ocean-going vessels. (Dkt. No. 1, ¶ 3, a copy of which is attached as **Exhibit B**).

5.     Defendant and Third-Party Plaintiff Lauritzen is a foreign business entity organized under the laws of Denmark and, at all times material to this action, was the time charterer of the M/V SHANGHAI, an ocean-going bulk carrier.

6.     Upon information and belief, Kirby is a Texas corporation with its principal place of business in or around Houston, Texas and is engaged in the business of physically supplying marine fuels to ocean-going vessels such as the M/V SHANGHAI (hereinafter the "Vessel").

### Factual Background

7.     On or about April 25, 2022, Lauritzen contracted with Nalex to supply marine fuel to the Vessel (the term "bunkers" is commonly used in the industry to refer to marine fuels). As time charterer of the Vessel, Lauritzen was obligated to procure bunkers for the operation of the Vessel while it was under charter to Lauritzen.

8.     The relevant terms of the contract between Nalex and Lauritzen required, *inter alia*, that the bunkers supplied by Nalex meet the international quality standards for bunkers found in ISO 8217:2017. These international quality standards have set parameters for the composition of bunkers for use in the engines of ocean-going vessels. One such parameter is a combination of aluminum and silicon, commonly referred to as catfines. The maximum permissible content for catfines under the ISO

8217:2017 international quality standard is 60 mg/kg.

9. Upon information and belief, Nalex retained Kirby as delivery agent and barge contractor to physically deliver the bunkers to the Vessel. (See Dkt. No. 1, ¶ 11, **Exhibit B**). According to the Marine Fuel Delivery Receipt ("MFDR") filed by Nalex with its Verified Original Complaint (Dkt. No. 1-4, copy attached, **Exhibit B**), the physical delivery of the bunkers to the Vessel occurred on April 25, 2022, by way of Barge Kirby 27735 delivering the bunkers to the Vessel, which was anchored at 9-mile Anchorage in New Orleans, Louisiana.

10. Upon information and belief, samples of the bunkers being delivered to the Vessel were taken by a Kirby barge tankerman while aboard Barge Kirby 27735 and the seal numbers for the samples taken were written on the MFDR. (See Dkt. No. 1, ¶ 12, Dkt. No. 1-4, **Exhibit B**).

11. Upon information and belief, as the bunkers were being delivered to the Vessel, samples were being collected by the Vessel's crew from the Vessel's bunker inlet manifold by continuous drip sample method.

12. Two of the continuous drip samples taken at the Vessel's bunker intake manifold on the date of delivery were analyzed and the results indicated a catfines content far in excess of the 60 mg/kg maximum permitted by ISO 8217:2017; to wit, 118 mg/kg (Intertek Lintec Fuel Quality Report – Dkt. 14-1, copy attached, **Exhibit A**) and 102 mg/kg (Intertek Caleb Brett – Dkt. 14-2, copy attached, **Exhibit A**). A third sample taken from the Vessel's bunker tank no. 3S after the bunkers supplied by Nalex had been received on board were analyzed and the results also indicated a catfines content well in excess of the 60 mg/kg maximum permitted by the ISO quality standards – 99 mg/kg (Intertek Caleb Brett – Dkt. No. 14-3, copy attached, **Exhibit A**). The analyses of these samples clearly show that the bunkers supplied to the Vessel by Nalex were off-specification by significant amounts under the ISO quality standards for catfines.

13.     In its Verified Original Complaint, Nalex relies on two laboratory analyses for the proposition that the bunkers supplied to the Vessel were on-specification because the catfines content was 17 ppm (AmSpec 5/2/22) for one of the bunker samples (seal # 1191919) from the Kirby barge (Dkt. No. 1-7, copy attached, **Exhibit B**) and the catfines content was 34 ppm (Intertek Caleb Brett 5/5/22) for a second bunker sample (seal #1191918) from the Kirby barge (Dkt. No. 1-5, copy attached, **Exhibit B**).  Both of the results – 17 ppm and 34 ppm – were less than the 60 mg/kg maximum permitted under the ISO quality standards.

14.     In October 2022, bunker samples (seal # 0153995 and # 1191920) from the Kirby barge were analyzed with the results of 31 ppm and 30 ppm respectively for catfine content (Dkt. No. 14-4 and 14-5, copies attached, **Exhibit A**).  These results were also less than the maximum permitted under the ISO quality standards.

15.     What the test results from all of these analyses indicate is that all four Kirby barge samples were found to be outside the reproducibility of the Vessel manifold continuous drip samples, indicating that the barge samples were significantly different than the Vessel manifold samples in regard to catfines content.

16.     These analyses also showed that with the other parameters of the bunkers (from Table 2 of the ISO quality standards) being comparable between the Vessel bunker inlet manifold and barge external line samples, the barge external line bunker samples were underestimating the catfines content due to the manner in which the barge samples were drawn.

17.     The significant difference in the catfines content between the Vessel bunker inlet manifold samples and barge external line samples was due to Kirby's negligence because (a) the barge external line samples were likely improper spot samples (rather than industry standard continuous drip samples) and/or (b) the samples drawn from the barge external line were not mixed properly prior to

4

sub-sampling.

18. The improper and negligent sampling methods used by Kirby in taking the barge external line samples resulted in analyses and certificates of analyses that did not accurately reflect the catfines content in the bunkers delivered to the Vessel. The samples and analyses and certificates of analyses for which inaccurate results were obtained are set forth in paragraphs 13 and 14 above.

19. As a result, the bunkers that were actually received on the Vessel on April 25, 2022, were off-specification because they did not comply with the ISO quality standards for catfines as agreed in the contract between Nalex and Lauritzen.

20. The direct and foreseeable consequences of Kirby's negligence in employing improper sampling methods with the result of inaccurate analyses and certificates of analyses being issued of the bunker barge external line samples were:

(a) the dispute arising between Nalex and Lauritzen as to whether or not the bunkers were on-specification or off-specification for catfines content;

(b) the demand by Nalex for security for payment of the bunkers and later threat of arrest of the Vessel for security, which necessitated the payment to Nalex under protest by Lauritzen of the full purchase price for the off-specification bunkers. The full purchase price paid under protest by Lauritzen was $249,804.58;

(c) the hiring of marine surveyors and experts to determine the nature, cause, and extent of the quality condition of off-specification bunkers. The cost of these marine surveyors and experts is currently approximately $15,000.00 and will increase as additional invoices for these services are received and paid; and

(d) the hiring of legal counsel to assist in determination of Lauritzen's rights and payment obligations in regard to delivery of off-specification bunkers by Nalex. The cost of legal

counsel is currently approximately $60,000.00 and will increase as additional invoices are received and paid.

    21.    In sum, Lauritzen seeks to recover the following sums from Kirby for:

        a.    $249,804.58 – see paragraph 20(b);

        b.    $15,000.00 – see paragraph 20(c); and

        d.    $60,000.00 – see paragraph 20(d).

    **TOTAL**    **$324,804.58**

WHEREFORE, Defendant Lauritzen Bulkers A/S prays that:

    a.    a judgment issue against Kirby and in favor of Lauritzen awarding damages to Lauritzen in the amount sought in this Third-Party Complaint, $324,804.58, together with an award of interest, costs, and attorneys' fees;

    b.    a judgment issue against Kirby and in favor of Nalex, pursuant to Rule 14(c) of the Fed. R. Civ. P., for the damages sought in the Verified Original Complaint, or otherwise, plus interest, costs, and attorneys' fees; and

    c.    the Court grant Lauritzen such other and further relief as it may see fit.

Dated: November 23, 2022

Respectfully submitted,

**Lyons & Flood, LLP**

As Attorneys for Defendant Lauritzen Bulkers A/S

*/s/ Kirk M. Lyons*
Kirk M. Lyons
*Admitted Pro Hac Vice*
The Towers, Suite 206
111 Great Neck Road
Great Neck, NY 11021
(212) 594-2400
klyons@lyons-flood.com

CO-COUNSEL

**Royston, Razor, Vickery & Williams, LLP**

Attorneys for Defendant Lauritzen Bulkers A/S

Kevin P. Walters, Esq.
Texas State Bar No.: 20818000
Fed. I.D. No.: 5649
1600 Smith Street, Suite 5000
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9545
Kevin.walters@roystonlaw.com

**Certificate of Service**

      The foregoing Third-Party Complaint was served on all counsel of record via the Court's ECF system on November 23, 2022.

*/s/ Kirk M. Lyons*
Kirk M. Lyons