# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NALEX ENERGY, LLC | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | Civ. No. 4:22-cv-01824 |
| LAURITZEN BULKERS A/S, | § | FED. R. CIV. P. 9(h) |
| J. LAURITZEN (U.S.A.), INC., | § | Admiralty Claim |
| J. LAURITZEN A/S AND | § | |
| DEAL ENERGY A/S | § | |
|     Defendants. | § | |

**DEFENDANT LAURITZEN BULKERS A/S' ANSWER**
**TO THE VERIFIED ORIGINAL COMPLAINT AND**
**COUNTERCLAIM**

Defendant Lauritzen Bulkers A/S ("Lauritzen")[1] in answer to the Verified Original Complaint (the "Complaint") respectfully would show the Court as follows.

**Jurisdiction and Venue**

1.      Admits the allegations contained in paragraph 1 of the Complaint.

2.      Admits that venue for this civil action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in answer to paragraph 2 of the Complaint.

**Parties**

3.      Admits the allegations contained in paragraph 3 of the Complaint.

4.      In response to paragraph 4 of the Complaint, admits that defendant Lauritzen is a foreign business entity organized under the laws of Denmark and located at 15 Tuborg Havnevej 2900 Hellerup, Denmark, that Defendant Lauritzen is engaged in business as a charterer and operator of bulk carriers which call at Texas ports, was the charterer of the M/V SHANGHAI at all times

---

[1] Plaintiff Nalex and Defendant Lauritzen are working on a stipulation that would dismiss the Verified Original Complaint against Defendants J. Lauritzen (U.S.A.), Inc., J. Lauritzen A/S, and Deal Energy A/S on a without prejudice basis.  A Stipulation to that effect is being reviewed and the parties anticipate filing it with the Court shortly.

material to this Complaint, and procured the bunkers for which payment has been made by Defendant Lauritzen under protest and without prejudice, further that Defendant Lauritzen does not maintain a regular place of business or a designated agent upon whom service of process may be had, but except as so specifically admitted herein, denies the remaining allegations in paragraph 4 of the Complaint. Defendant Lauritzen has signed a waiver of service of process pursuant to Rule 4, Federal Rules of Civil Procedure and therefore, formal service of process on defendant is not required and the allegations regarding formal service of process need not be answered.  Since Defendant Deal Energy A/S has been or will be dismissed from the action on agreement of Plaintiff and Defendant Lauritzen, the allegations regarding Deal Energy A/S need not be answered.

5.     Defendants J. Lauritzen (U.S.A.), Inc. and J. Lauritzen A/S have been or will be dismissed from the action on agreement of Plaintiff and Defendant Lauritzen, the allegations regarding Defendants J. Lauritzen (U.S.A.), Inc. and J. Lauritzen A/S need not be answered.

**Factual Background**

6.     Admits that Nalex brought this action to recover amounts allegedly due and owing to it under a maritime contract with Lauritzen for the supply of marine fuel oil (known in the marine industry as "bunkers") to the M/V SHANGHAI (IMO: 9220988) (hereinafter the "SHANGHAI" or "the Vessel"), but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 6 of the Complaint.

***Nalex and Lauritzen entered into a contract for the supply of bunkers.***

7.     Admits the allegations contained in paragraph 7 of the Complaint.

8.     Admits the allegations contained in paragraph 8 of the Complaint.

9.     Admits that Nalex's General Terms govern the parties' rights with respect to the subject bunker delivery, that section 1.2 of Nalex's General Terms defines the term "Buyer" to mean "the party and/or parties contracting to buy products and/or services as set out in the Seller's Confirmation

2

of Order for Products and/or Services, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable." Ex. 3, General Terms, p. 1, art 1.2, that the Confirmation Order provides that "Lauritzen Bulkers A/S" is the "buyer" for the subject sale of bunkers. Ex. 2, that pursuant to Section 7.14, Lauritzen also warranted that it had express authority from the Vessel's owner to purchase the bunkers. Ex. 3, General Terms, p. 1, art 7.14., but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 9 of the Complaint.

10.    Admits that the Confirmation Order requires payment for the bunkers within 30 calendar days of delivery and provides for the accrual of interest on any late payment. Ex. 2, General Terms, p. 6, art 9.4, that Nalex's General Terms state that "[t]imely payment is of the essence. [Nalex] shall be absolutely entitled to the payment in full without discount, reduction, counterclaim or set off (whether legal or equitable)" *Id.*, art. 9.1, that Nalex's General Terms further provide that ".    Buyer shall not be entitled without Seller's consent in writing, to offset any amounts for claims against seller, whether or not these claims are connected, and whether or not they arise out of the contract." *Id.,* art. 9.2, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 10 of the Complaint.

### *Nalex supplies bunkers to the SHANGHAI*

11.    Admits the allegations contained in paragraph 11 of the Complaint.

12.    Denies knowledge or information sufficient to believe the truth of the matters asserted in paragraph 12 of the Complaint and therefore, denies the allegations contained in paragraph 12 of the Complaint.

13.    Admits that a Marine Fuel Delivery Receipt (hereinafter "BDN") was signed by the Vessel's Chief Engineer and stamped with the seal of the Vessel acknowledging receipt of the subject bunkers. Ex. 4, Marine Fuel Delivery Receipt and that the BDN also provides the seal

numbers for the above-described fuel samples obtained, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 12 of the Complaint.

### *Lauritzen complains about the quality of the bunkers*

14.     Admits that on April 30, 2022, Lauritzen advised Nalex that the Vessel's owners testing of the supplied bunkers shows cat fines above the tolerable limits of ISO 8217, that the Vessel owner's test results indicated that the aluminum and silicone levels, typically combined to determine the content level of cat fines, were above the tolerable amount of 60mg/kg, and that the sample tested by the Vessel's owners selected laboratory was collected from the Vessel's inlet manifold by continuous drip sample method, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 14 of the Complaint.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 15 of the Complaint, but except as so denied, admits that Lauritzen requested a further testing of a bunker sample with a full ISO specification.

16.     Admits that Lauritzen requested that Nalex suggest an independent laboratory that can complete joint testing of one of the representative samples indicated on the BDN and that Nalex responded to Lauritzen by proposing AmSpec, Camin Cargo, or Inspectorate as the laboratory to conduct final and binding testing of aluminum and silicone from a representative sample, but except as so specifically admitted herein, denies the remaining allegations contained in paragraph 16 of the Complaint.

17.     Admits the allegations contained in paragraph 17 of the Complaint.

18.     Admits that Section 5.4 of Nalex's General Terms provides in part: "*Where reasonably practical, the samples shall be taken in accordance with ISO-8217, but shall otherwise be taken at a point and in a manner chosen by Seller or its representative*." See Ex. 3, and that

Paragraph 4 of ISO-8217 provides that "*samples for quality verification may be taken in any location agreed between the parties,*" but except as so specifically admitted herein, denies the remaining allegations in paragraph 18 of the Complaint.

19.     Denies the allegations contained in paragraph 19 of the Complaint.

20.     Denies the allegations contained in paragraph 20 of the Complaint and that Lauritzen agreed that the test results would be final and binding on the parties, but except as so denied herein, admits that Lauritzen advised, "*As to the test results being final and binding, we can deal with same as per the supply contract terms.*"

### *AmSpec's final and binding analysis confirms the bunkers are on-spec*

21.     Admits that upon receipt of AmSpec's analysis, Lauritzen advised Nalex that the Vessel would like to perform additional testing on the representative sample and also perform further testing of samples obtained from the vessel manifold, that Nalex rejected Lauritzen's proposal for additional testing, that Nalex reiterated that Amspec's analysis is final and binding on the parties, that Nalex rejected Lauritzen's proposal for additional testing, and that Nalex reiterated that AmSpec's analysis is final and binding on the parties, and advised Lauritzen that it considered the claim closed, but except as so specifically admitted herein, denies that AmSpec's analysis was final and binding on the parties and denies the remaining allegations contained paragraph 21 of the Complaint.

22.     Denies that AmSpec's analysis was final and binding on the parties and denies the allegations contained in paragraph 22 of the Complaint.

23.     Admits that section 5.6 of Nalex's General Terms provide that "*[u]nless otherwise agreed to in writing by Seller, only samples provided by Seller to Buyer at the time of delivery shall be deemed representative of the Product delivered,*" and that section 5.5 provides that "*[i]f . . . no agreement has been reached by the two parties, Seller reserves the right to have one its retained*

*sealed samples independently analyzed and for the results to be final and binding upon both parties,"*
but except as so specifically admitted herein, denies that the AmSpec analysis was final and binding
on the parties and denies the remaining allegations contained in paragraph 23 of the Complaint.

### *Lauritzen is in breach of its contract with Nalex*

24.     Admits that the purchase price of the subject bunkers was $249,804.58, but except as so
specifically admitted herein, denies the remaining allegations contained in paragraph 24 of the
Complaint.

25.     Admits that payment for the bunkers was duly demanded by Nalex, but except as so
specifically admitted herein, denies the remaining allegations contained in paragraph 25 of the
Complaint.  On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest
and without prejudice to any of its rights and/or defenses.

### Breach of Maritime Contract against Lauritzen

26.     Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing
paragraphs.

27.     Admits that Lauritzen and Nalex entered into a contract for the purchase and delivery
of bunkers to its chartered vessel and that Nalex provided bunkers to the M/V SHANGHAI pursuant
to the terms of the Confirmation Order and its General Terms, but except as so specifically admitted
herein, denies the remaining allegations contained in paragraph 27 of the Complaint.  On or about July
28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any
of its rights and/or defenses.

### Unjust Enrichment/Quantum Meruit against Lauritzen

28.     Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing
paragraphs.

29.      Denies the allegations contained in paragraph 29 of the Complaint. On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

30.      Denies the allegations contained in paragraph 30 of the Complaint. On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

## Suit on Account against Lauritzen and Deal Energy

31.      Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

32.      Denies the allegations contained in paragraph 32 of the Complaint. On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

33.      Denies the allegations contained in paragraph 33 of the Complaint. On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses.

## Conditions Precedent

34.      Denies the allegations contained in paragraph 34 of the Complaint (improperly numbered 30 in the original Complaint).

## Reservation of Claims against the M/V SHANGHAI, *in rem*, pursuant to Rule C of the Supplemental Admiralty Rules

35.      Denies the allegations contained in paragraph 35 of the Complaint (improperly numbered 31 in the original Complaint). On or about July 28, 2022, Lauritzen paid the sum of $249,804.58 to Nalex under protest and without prejudice to any of its rights and/or defenses. Any

maritime lien that may have existed against the M/V SHANGHAI was extinguished by payment of the underlying debt upon which Nalex's claim is based.

## Waiver

36.     Denies the allegations contained in paragraph 36 of the Complaint (improperly numbered 32 in the original Complaint).

## FIRST AFFIRMATIVE DEFENSE

37.     The Complaint fails to state a claim upon which can be granted.

## SECOND AFFIRMATIVE DEFENSE

38.     Nalex's claim which is the subject of this action has been extinguished by payment of the claim by Lauritzen on or about July 28, 2022, under protest and without prejudice to any of its rights and/or defenses.

## LAURITZEN'S COUNTERCLAIM AGAINST NALEX

Defendant Lauritzen, as and for a Counterclaim against Plaintiff Nalex, alleges as follows:

39.     Lauritzen repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

40.     At the time the Nalex bunkers were supplied, the M/V SHANGHAI (the "Vessel") was under time charter to Lauritzen.  One of Lauritzen's obligations under the time charter was to purchase bunkers to operate the Vessel between the various ports for which it was chartered to carry cargo.

41.     In its Counterclaim, Lauritzen seeks compensation for the supply by Nalex of marine fuel oil (commonly referred to as "bunkers") to the Vessel that did not meet the contractual specification for two parameters, aluminum and silicon (together referred to a "catfines").

42.     The contractual specification for catfines is contained in the international standard ISO

8

8217:2017, which provides for a maximum permissible content for catfines (*i.e.*, aluminum + silicon) of 60 mg/kg.

43.     During the physical delivery of the bunkers from the Kirby Marine bunker barge 27735 via hose to the Vessel's bunker intake manifold, the Vessel took continuous drip samples of the bunkers.  Two of the continuous drip samples taken at the Vessel's bunker intake manifold on the date of delivery, April 25, 2022, were analyzed and indicated a catfines content far in excess of the maximum permissible by ISO 8217:2017 – 118 mg/kg (Intertek Lintec Fuel Quality Report – Ex. A attached) and 102 mg/kg (Intertek Caleb Brett – Ex. B attached) versus 60 mg/kg permitted by the ISO standard.  A third sample taken from bunker tank no. 3S after the bunkers supplied by Nalex had been taken on board the Vessel were analyzed and also indicated a catfines content well in excess of the maximum permissible – 99 mg/kg (Intertek Caleb Brett – Ex. C attached).  The analyses of these samples clearly show that the bunkers supplied by Nalex were off-specification for catfines by significant amounts.

44.     In its Complaint, Nalex relies on two laboratory analyses for the proposition that the bunkers supplied to the Vessel were on-specification because the catfines content was 17 ppm (AmSpec 5/2/22) for one of the bunker samples (seal # 1191919) from the Kirby Marine barge (Dkt. No. 1-7) and the catfines content was 34 ppm (Intertek Caleb Brett 5/5/22) for a second bunker sample (seal #1191918) from the Kirby barge (Dkt. No. 1-5).  Both of the results – 17 ppm and 34 ppm – were less than the 60 mg/kg maximum permitted under the ISO standard.

45.     In October 2022, bunker samples (seal # 0153995 and # 1191920) from the Kirby Marine barge were analyzed with the results of 31 ppm and 30 ppm respectively for catfine content (Exs. D and E).  These results were similarly less than the maximum permitted under the ISO standard.

46.     What the test results from all of these analyses indicate is that all four Kirby Marine

barge samples were found to be outside the reproducibility of the Vessel manifold drip samples, indicating that the barge samples were significantly different than the Vessel manifold samples in regard to catfine content.

47.     These analyses also showed that with the other parameters of the bunkers, based on Table 2 of the ISO standard, being comparable between the Vessel bunker manifold and barge external line samples, the barge external line bunker samples were underestimating the catfine content due to the manner in which the barge samples were drawn.  The significant difference in the catfine content between the Vessel manifold samples and barge samples was due to (a) the barge external line samples were likely spot samples (rather than continuous drip samples) and/or (b) the samples drawn from the barge external line were not mixed properly prior to sub-sampling.

48.     As a result, the bunkers that were actually received on the Vessel on April 25, 2022, were off-specification because they did not comply with the ISO standard agreed in the contract between Nalex and Lauritzen.  Therefore, Nalex has breached the warranty that the bunkers supplied would met the contractual specifications contained in the ISO standard.

49.     Since the bunkers supplied by Nalex were off-specification, the Vessel refused to use these bunkers as fuel for the Vessel's engines for fear of causing damage to the engines and other machinery aboard the Vessel.

50.     Inasmuch as the Vessel did not have sufficient bunkers on board to reach the next cargo port, the Vessel had to divert to Freetown, Bahamas and purchase replacement bunkers at a cost of $248,200.  The port costs of diverting the Vessel to Freetown to obtain replacement bunkers was approximately $50,000.  The Owners of the Vessel have sought to recover the cost of replacement bunkers and port costs from Lauritzen in a separate proceeding.

51.     Also, as a result of the Nalex bunkers being off-specification, Lauritzen was required

10

to retain marine surveyors and experts to determine the nature, cause, and extent of the off-specification bunkers. The cost of these marine surveyors and experts is currently approximately $15,000 and will increase as additional invoices for these services are received.

52.     Since the off-specification bunkers could not be used on board the Vessel as marine fuel, efforts were made in May 2022 to sell them in off-specification condition. No bunker or salvage company showed an interest taking in these bunkers, except for one who agreed to de-bunker the Vessel and take the off-specification bunkers for payment of $13,000 to do so. Thus, the bunkers supplied by Nalex had no value as off-specification bunkers. The Owners of the Vessel have sought to recover the $13,000 cost of de-bunkering the Nalex bunkers in a separate proceeding. In addition to the cost of de-bunkering, the Vessel also lost time during the course of de-bunkering and related time loss. The value of this lost time is $47,113.26 and Owners have claimed this amount from Lauritzen in a separate proceeding.

53.     Lauritzen is also entitled to damages for Nalex's breach of warranty under the contract to supply bunkers to the Vessel. The damages for breach of warranty by Nalex is the value of the bunkers as warranted in the contract less the value of the bunkers as off-specification. In this instance, the value of the bunkers as warranted would be $249,804.58, the price paid by Lauritzen, less the zero value as off-specification bunkers. Therefore, Lauritzen is entitled to $249,804.58 in damages from Nalex for breach of warranty on the sale of the bunkers to Lauritzen.

54.     In sum, Lauritzen seeks to recover the following sums from Nalex:

a.      $249,804.58 – see paragraph 53;

b.      $248,200 + $50,000 – see paragraph 50;

c.      $15,000 – see paragraph 51; and

d.      $13,000 + $47,113.26 – see paragraph 52.

TOTAL          $623,117.84

WHEREFORE, Defendant Lauritzen Bulkers A/S prays that:

a.      a judgment issue against Nalex and in favor of Lauritzen dismissing Nalex's Verified Original Complaint together with an award of costs and attorneys' fees in favor of Lauritzen;

b.      a judgment issue against Nalex and in favor of Lauritzen awarding Lauritzen $623,117.84 in damages on the Counterclaim plus interest, costs, and attorneys' fees; and

c.      the Court grant Lauritzen such other and further relief as it may see fit.

Dated: November 9, 2022

Respectfully submitted,

**Lyons & Flood, LLP**

As Attorneys for Defendant Lauritzen Bulkers A/S

*/s/ Kirk M. Lyons*
Kirk M. Lyons
Admitted Pro Hac Vice
The Towers, Suite 206
111 Great Neck Road
Great Neck, NY 11021
(212) 594-2400
klyons@lyons-flood.com

**<u>Certificate of Service</u>**

The foregoing Answer with Counterclaim was served on all counsel of record via the Court's ECF system on November 9, 2022.

<u>*/s/ Kirk M. Lyons*</u>
Kirk M. Lyons

EXHIBIT A

# Intertek Lintec
# Fuel Quality Report



**SHANGHAI (9220988)**

**NOLA • 25/04/2022**

---

### Overview

Aluminium + Silicon content (Result 118 mg/kg against 60 mg/kg limit)

Sample information has been collated from the vessel's bunker data form and sample bottle label.

| | | | |
|---|---|---|---|
| **Sample No.** | DL388245 | **Grade Ordered** | RMG380 |
| **Client** | Intership Navigation Co Ltd | **Sulphur Grade** | 0.50% max |
| **Received by Lab** | 29/04/2022 | **Quantity Supplied** | 260.41 M.T. |
| **Terminal** | | | |

| **Bunker Information** | | **Sample Seal Information** | | **Courier Information** | |
|---|---|---|---|---|---|
| **Bunker Port** | NOLA | **Seal Condition** | Intact | **DHL PAD Used** | No |
| **Bunker Date** | 25/04/2022 | **Analysis Sample** | 0273939/0300780 | **DHL PAD Comments** | |
| **Sample Date** | 25/04/2022 | | | **Courier** | |
| **Fuel Supplier** | V Marine Fuels | **Supplier Sample** | | **Airway Bill No.** | 8720945354 |
| **Barge** | Not Stated | **Vessel Sample** | | | |
| **Sample Location** | Vessel manifold | **Marpol Sample** | | | |
| **Sample Method** | Continuous drip | | | | |

| | **Density** (kg/m³@15°C) | **Viscosity** (cSt@50°C) | **Sulphur** (%mass) |
|---|---|---|---|
| **Specification** | 991.0 | 380.0 | 0.50 |
| **Supplier BDR** | 932.2 | 20.92 | 0.485 |
| **Analysed sample** | 931.0 | 37.56 | 0.47 |

| Parameter | Result | Units | Spec Limit | Test Variance (±) | Method |
|---|---|---|---|---|---|
| Viscosity (50°C) | 37.56 | cSt@50°C | 380.0 max | 18.97 | ISO 3104* (20) |
| Density | 931.0 | kg/m³@15°C | 991.0 max | 0.9 | ISO 12185* (96) |
| CCAI | 822 | Index # | 870 max | | ISO 8217:B |
| Sulphur | 0.47 | % mass | 0.50 max | 0.030 | ISO 8754 (03) |
| Flash Point | >70.0 | °C | 60.0 min | | ISO 2719* (16) |
| Acid Number | 0.20 | mg KOH/g | 2.50 max | 0.50 | ASTM D664 (18) |
| Total Sediment | 0.05 | % mass | 0.10 max | 0.05 | ISO 10307-2 (09) |
| Micro Carbon Residue | 3.07 | % mass | 18.00 max | 0.99 | ISO 10370 (14) |
| Pour Point | +27 | °C | 30 max | 4 | ISO 3016 (19) |
| Water | 0.15 | % vol | 0.50 max | 0.12 | ISO 3733 (99) |
| Ash | 0.074 | % mass | 0.100 max | 0.014 | ISO 6245 (01) |
| Vanadium | 7 | mg/kg | 350 max | 33 | IP 501 (05) |
| Sodium | 48 | mg/kg | 100 max | 8 | IP 501 (05) |
| Aluminium plus Silicon | 118* | mg/kg | 60 max | 12 | IP 501 (05) |
| Net Specific Energy | 41.77 | MJ/kg | | | ISO 8217:A |
| Calcium | 29 | mg/kg | | | IP 501 (05) |

| Parameter | Result | Units | Spec Limit | Test Variance (±) | Method |
|---|---|---|---|---|---|
| Zinc | 7 | mg/kg | | | IP 501 (05) |
| Phosphorus | 8 | mg/kg | | | IP 501 (05) |
| Aluminium | 60 | mg/kg | | | IP 501 (05) |
| Silicon | 58 | mg/kg | | | IP 501 (05) |
| Iron | 24 | mg/kg | | | IP 501 (05) |
| Nickel | 7 | mg/kg | | | IP 501 (05) |
| Magnesium | 6 | mg/kg | | | IP 501 (05) |
| Lead | <1 | mg/kg | | | IP 501 (05) |
| Compatibility | 2 | Spot # | | | ASTM D4740 (20) |
| Injection Temp @ 10 cSt | 95 | ℃ | | | |
| Injection Temp @ 12 cSt | 88 | ℃ | | | |
| Injection Temp @ 15 cSt | 79 | ℃ | | | |
| Injection Temp @ 17 cSt | 75 | ℃ | | | |
| Injection Temp @ 20 cSt | 69 | ℃ | | | |
| Injection Temp @ 22 cSt | 66 | ℃ | | | |
| Minimum Pumping Temp @1000 cSt | 37 | ℃ | | | |

* result exceeds specification.

Sample results are compared with the specification for RMG380 ISO 8217:2012 for the parameters reported.

Analysis has been carried out on samples as received, independent of sampling procedure, using the latest versions of all test methods.

* Validated modifications to these methods have been incorporated.

ONBOARD FUEL BLENDING IS NOT RECOMMENDED.

Refer to your engine manufacturer's guidelines for max/min alarm settings.

**Engineering Notes**

**Aluminium + Silicon content (Result 118 mg/kg against 60 mg/kg limit)**

The sample result indicates the presence of abrasive contaminants. If not removed, possible wear damage may occur to fuel pump plungers and barrel, injector needles and cause increased cylinder liner and piston ring wear.

On the above basis, we would recommend that this fuel is NOT USED pending confirmation that the sample submitted to our laboratory was representative of the product supplied. If possible, samples should be taken from the bunker tanks and submitted for analysis. We would also recommend that the possibility of obtaining samples before and after the purifiers, without adversely affecting the operation of the main engine, be investigated. As with the taking of all samples, it is essential that the chief engineer makes every effort to ensure that the most representative sample possible is taken. If the sample is to be taken from the transfer pump then the tanks should be circulated for at least 30 mins prior to this. Furthermore, the sampling point should be cleared of all other product by running through several litres of this fuel prior to the taking of the sample.

Analysis of these samples will give an indication of the efficiency of the purifiers and the Al + Si content of the fuel that has been through the pre-treatment process. If these results are confirmed outside critical operating levels, it must be stressed that the vessel probably will suffer damage to the engine through the use of this fuel.

Typically the engine manufacturers set operating levels of 10 - 15 mg/kg at the point of injection. Centrifuges run efficiently between 70 – 90 % separation. Please check with your engine manufacturer for details.

However, if the vessel has no other alternative than to use the fuel, it is important that the fuel is efficiently centrifuged.

* The Centrifuges should be run in series as clarifier/clarifier.

* The purifier should be checked to ensure that the optimum gravity disc is installed and the lowest possible flow-rate should be used (just enough to meet daily consumption).

* If possible, change the filter between service tank and engine to the lowest available.

In supplying this advice we have focused on the application of a traditional purifier / clarifier and the set up needed to deal with this particular product.

However, we fully appreciate that not all vessels have a "traditional" purifier set up or capability. Should your vessel be fitted with an alternative system or high density purifier (an ALCAP purifier for example) we would suggest that specific advice be sought from the manufacturer regarding its capabilities in dealing with this product.

We would suggest that the suppliers are put on notice and the retained sample on board the vessel is secured pending further investigation.

---

• Do you have enough sample bottles?

• If not, please refer to your instruction folder for supply details.

• Alternatively, contact the Intertek Lintec Logistics Department at lintec.testing@intertek.com or call 0044 1325 390180.

• Reports can also be viewed online at https://sentinel.intertek-lintec.com if you require assistance to access your account, please contact lintec.results@intertek.com

• Please let us know you have a sample ready for collection and use the Priority Advantage Desk (PAD) by using the web page https://intertek-lintec.com/

---

Narinder Singh
Customer Services
Intertek Lintec

Enterprise House
Valley Street North
Darlington
DL1 1GY
United Kingdom

**Signed**

**Reported By**       Narinder Singh

**Report Date**       30/04/2022

# EXHIBIT B

**Report of Analysis**

intertek
# caleb brett

| | |
|---|---|
| **Client:** Lintec Testing Services Ltd. | **Client Reference Number:** |
| **Job Location:** Borco Terminal | 9220988 |
| **Vessel:** SHANGHAI | |
| **Our Reference Number:** BA100-0009494 | |
| **Lab Reference Number:** 2022-BHMS-000178 | |

| Description | Method | Test | Result | Units |
|---|---|---|---|---|
| **FUEL OIL    25-Apr-2022** | **Shanghai - Vessel Manifold Continuous Drip  Submitted Sample  Sample Only** | | | |
| **2022-BHMS-000178-002** | IP 501 | Aluminium | 50 | mg/kg |
| | | Silicon | 52 | mg/kg |
| | | Aluminium + Silicon | 102 | mg/kg |

This report has been reviewed for accuracy, completeness, and comparison against specifications when available.  The reported results are only representative of the samples submitted for testing.  This report shall not be reproduced except in full without approval of the laboratory.

Signed: _____    Date: _5 May, 2022_____

Grahaem Rettie, Laboratory Manager



*BORCO Lab Building, W Sunrise Highway, P.O. Box F42428 Freeport, Grand Bahama Bahamas*
Tel.: +1 (242) 351-6474 Fax.: +1 (242) 351-2989 Email: bhms.ship@intertek.com

# EXHIBIT C



# Report of Analysis

| | | | | | | |
|---|---|---|---|---|---|---|
| **Client:** Lintec Testing Services Ltd. | | | **Client Reference Number:** 9220988 | | | |
| **Job Location:** Borco Terminal | | | | | | |
| **Vessel:** SHANGHAI | | | | | | |
| **Our Reference Number:** BA100-0009494 | | | | | | |
| **Lab Reference Number:** 2022-BHMS-000178 | | | | | | |

| Description | Method | Test | Result | Units | Spec Limit |
|---|---|---|---|---|---|
| **FUEL OIL    07-May-2022** | **SHANGHAI Resample  Composite** | | | | |
| 2022-BHMS-000178-009 | ASTM D7042 | Kinematic Viscosity @ 50°C | 40.19 | cSt | Max 380 |
| | ASTM D4052 | Density @ 15°C | 899.8 | kg/m³ | Max 991.0 |
| | | API Gravity at 60 deg F | 20.4 | °API | Min 11.3 |
| | ISO 8217 F | CCAI | 789.5 | | Max 870.0 |
| | ASTM D4294 | Sulfur Content | 0.500 | Wt % | |
| | ASTM D93 | Procedure Used | B | | |
| | | Corrected Flash Point | 108.0 | °C | Min 60.0 |
| | IP 570 | Hydrogen Sulfide Content | <0.40 | mg/kg | Max 2.00 |
| | ASTM D664 | Acid Number | 0.25 | mg KOH/g | Max 2.50 |
| | ASTM D4870-X1 | Accelerated Total Sediment (Procedure B) | 0.10 | %(m/m) | Max 0.10 |
| | ASTM D4530 | Average Micro Method Carbon Residue | 3.30 | Wt % | Max 18.0 |
| | ASTM D97 | Pour Point | 30 | °C | Max 30 |
| | ASTM D95 | Water Content | 0.20 | Vol % | Max 0.50 |
| | ASTM D482 | Ash | 0.023 | Wt % | Max 0.100 |
| | IP 501 | Vanadium | 7 | mg/kg | Max 350 |
| | | Sodium | 61 | mg/kg | Max 100 |
| | | Aluminium | 49 | mg/kg | |
| | | Silicon | 50 | mg/kg | |
| | | Aluminium + Silicon | 99 | mg/kg | Max 60 |
| | | Calcium | 27 | mg/kg | Max 30 |
| | | Zinc | 16 | mg/kg | Max 15 |
| | | Phosphorus | 8 | mg/kg | Max 15 |

This report has been reviewed for accuracy, completeness, and comparison against specifications when available.  The reported results are only representative of the samples submitted for testing.  This report shall not be reproduced except in full without approval of the laboratory.

Signed: *Edwin Martinborough*
Intertek

Date: May 8th, 2022



*BORCO Lab Building, W Sunrise Highway, P.O. Box F42428 Freeport, Grand Bahama Bahamas*
*Tel.: +1 (242) 351-6474 Fax.: +1 (242) 351-2989 Email: bhms.ship@intertek.com*

08-May-2022  0:43
BA100-0009494

# EXHIBIT D



**1107 Center Street, Pasadena, TX 77506**
**Tel: (832)-900-7010  Fax: (832)-834-5549**
**www.nmkresources.com**



ISO/IEC 17025:2017 Certificate No.:L17-215

**CERTIFICATE OF ANALYSIS**

| Sample Source | Submitted Sealed Sample-Vessel Shanghai | File No.: | 004-22-00980 |
|---|---|---|---|
| Movement Type: | Submitted for testing & Witnessing | Sample ID: | P2210-0097 |
| Client: | Lauritzen Bulkers A/S | Date Sampled: | 10/11/2022 12.00 |
| Location: | Submitted via Courier | Date Reported: | 10/12/22 |
| Product: | VLSFO | Client Reference: | Seal#0153995 |

| TEST | METHOD | UNIT | RESULT | | MIN | MAX |
|---|---|---|---|---|---|---|
| API Gravity | D-4052 | API @ 60°F | 20.4 | | 11.2 | |
| Density | D-4052 | Kg/m³ @15°C | 931.1 | | | 991.0 |
| Viscosity, Kinematic | D-445 | CST @ 50°C | 43.45 | | | 380.0 |
| Sulfur | D-4294 | weight% | 0.479 | | | 0.500 |
| Pour Point | D-97 | °C/°F | 24 / 75 | | | 30/ 86 |
| Flash Point | D-93B | °C/°F | 106 / 223 | | 60 / 140 | |
| Water by Distillation | D-95 | volume% | <0.05 | | | 0.50 |
| Ash | D-482 | weight% | 0.018 | | | 0.100 |
| TSA | D-4870 | weight% | 0.04 | | | 0.10 |
| TSP | D-4870 | weight% | 0.06 | | | 0.10 |
| Micro Carbon Residue | D-4530 | weight% | 3.09 | | | 18.00 |
| Vanadium | IP-501 | PPM | 5 | | | 350 |
| Sodium | IP-501 | PPM | 16 | | | 100 |
| Aluminum | IP-501 | PPM | 14 | | | |
| Silicon | IP-501 | PPM | 17 | | | |
| Aluminum+Silicon | Calculation | PPM | 31 | | | 60 |
| Calcium | IP-501 | PPM | 17 | | | 30 |
| Zinc | IP-501 | PPM | 5 | | | 15 |
| Phosphorus | IP-501 | PPM | 5 | | | 15 |
| Nickel | IP-501 | PPM | 7 | | | |
| Total Acid # | D-664 | mg KOH/g | 0.21 | | | 2.5 |
| CCAI | ISO-8217 | Index | 820 | | | 870 |

*A.Elchazli*
*NMK Respresentative*

# EXHIBIT E



**1107 Center Street, Pasadena, TX 77506**
**Tel: (832)-900-7010   Fax: (832)-834-5549**
**www.nmkresources.com**



P2210-0096

 ISO/IEC 17025:2017 Certificate No.:L17-215

**CERTIFICATE OF ANALYSIS**

| Sample Source | Submitted Sealed Sample-Vessel Shanghai | File No.: | 004-22-00980 |
|---|---|---|---|
| Movement Type: | Submitted for testing & Witnessing | Sample ID: | P2210-0096 |
| Client: | Lauritzen Bulkers A/S | Date Sampled: | 10/11/2022 12.00 |
| Location: | Submitted via Courier | Date Reported: | 10/12/22 |
| Product: | VLSFO | Client Reference: | Seal#1191920 |

| TEST | METHOD | UNIT | RESULT | MIN | MAX |
|---|---|---|---|---|---|
| API Gravity | D-4052 | API @ 60°F | 20.4 | 11.2 | |
| Density | D-4052 | Kg/m³ @15°C | 931.0 | | 991.0 |
| Viscosity, Kinematic | D-445 | CST @ 50°C | 42.23 | | 380.0 |
| Sulfur | D-4294 | weight% | 0.486 | | 0.500 |
| Pour Point | D-97 | °C/°F | 24/ 75 | | 30/ 86 |
| Flash Point | D-93B | °C/°F | 106 / 223 | 60 / 140 | |
| Water by Distillation | D-95 | volume% | <0.05 | | 0.50 |
| Ash | D-482 | weight% | 0.020 | | 0.100 |
| TSA | D-4870 | weight% | 0.05 | | 0.10 |
| TSP | D-4870 | weight% | 0.07 | | 0.10 |
| Micro Carbon Residue | D-4530 | weight% | 3.16 | | 18.00 |
| Vanadium | IP-501 | PPM | 5 | | 350 |
| Sodium | IP-501 | PPM | 13 | | 100 |
| Aluminum | IP-501 | PPM | 13 | | |
| Silicon | IP-501 | PPM | 17 | | |
| Aluminum+Silicon | Calculation | PPM | 30 | | 60 |
| Calcium | IP-501 | PPM | 17 | | 30 |
| Zinc | IP-501 | PPM | 5 | | 15 |
| Phosphorus | IP-501 | PPM | 5 | | 15 |
| Nickel | IP-501 | PPM | 7 | | |
| Total Acid # | D-664 | mg KOH/g | 0.26 | | 2.5 |
| CCAI | ISO-8217 | Index | 820 | | 870 |

*A.Elchazli*
*NMK Respresentative*

**RESULTS ARE VALID "AS AT" DATE AND LOCATION LISTED**