# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **NALEX ENERGY, LLC** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **FED. R. CIV. P. 9(h)** |
| | § | **Admiralty Claim** |
| **LAURITZEN BULKERS A/S,** | § | |
| **J. LAURITZEN (U.S.A.), INC.,** | § | |
| **J. LAURITZEN A/S AND** | § | |
| **DEAL ENERGY A/S** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

COMES NOW, Plaintiff Nalex Energy, LLC against Defendants Lauritzen Bulkers A/S, J. Lauritzen A/S, J. Lauritzen (U.S.A.), Inc., and Deal Energy A/S and respectfully would show the Court as follows:

### Jurisdiction and Venue

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract. The case also falls within the Court's admiralty jurisdiction pursuant to 28 United States Code § 1333. Pendent or ancillary jurisdiction also lies on any non-federal claims as they arise out of the same transaction or occurrence or series of transactions or occurrences as the above claims.

2.     Venue for this civil action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant J. Lauritzen (U.S.A), Inc. is a Texas corporation and also

proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

### Parties

3.      Nalex Energy, LLC ("**Nalex**") is a Texas limited liability company with its principal place of business in Houston, Texas, and is authorized to do business in this State. Nalex is engaged in the business of selling and/or supplying of marine fuels to ocean going vessels.

4.      Defendants Lauritzen Bulkers A/S ("**Lauritzen Bulkers**"), J. Lauritzen A/S ("**J. Lauritzen**"), and Deal Energy A/S ("**Deal Energy**") are foreign business entities organized under the laws of Denmark and located at 15 Tuborg Havnevej 2900 Hellerup, Denmark. Lauritzen Bulkers is engaged in business as a charterer and operator of bulk carriers which frequently call Texas ports. Upon information and belief, Lauritzen Bulkers was the charterer of the M/V SHANGHAI at all times material to this Complaint and procured the bunkers for which payment is remains outstanding. J. Lauritzen is the parent company of Lauritzen Bulkers. Deal Energy served as bunkering agents for J. Lauritzen and/or Lauritzen Bulkers for the procurement of the bunkers made the subject of this complaint. Defendants have sufficient business contacts with the State of Texas for the purpose of accumulating monetary profit, including but without limitation entering into a contract for the provision of bunkers with a Plaintiff, Texas company, but do not maintain a regular place of business or a designated agent upon whom service of process may be had for causes of action arising out of such business done in the State of Texas. For these reasons, service of process is to be made pursuant to Rule 4(f), Federal Rules of Civil

Procedure, by and through the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, done at The Hague, November 15, 1965. 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. Said documents are to be forwarded to the Central Authority of Denmark as required by The Hague Convention, to wit: Ministry of Justice Procedural Law Division Slotsholmsgade 10, 1216 COPENHAGEN K, Denmark. Plaintiff would further show that Defendants engage in business in the State of Texas, but do not maintain a regular place of business or a designated agent for service of process in the State of Texas, and therefore, service of process is authorized under Section 17.044(b) of the Texas Civil Practice & Remedies Code by serving the Secretary of State of Texas as agent for Lauritzen Bulkers, J. Lauritzen, and Deal Energy.

5.      Defendant J. Lauritzen (U.S.A.), Inc. ("**Lauritzen USA**") is a Texas corporation with its principal place of business at 4 Landmark Square, Suite 150, Stamford, CT 06901-2502, and may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., STE 900, Dallas, Texas 75201. Lauritzen USA functions as the extended arm of Lauritzen Bulkers in connection with its chartering activities. Lauritzen Bulkers, J. Lauritzen, and J. Lauritzen (U.S.A.) Inc. are collectively referred to as "**Lauritzen**."

### Factual Background

6.      Nalex brings this action to recover amounts indisputably due and owing to it under a maritime contract with Lauritzen for the supply of marine fuel oil (known in the marine industry as "bunkers") to the M/V SHANGHAI (IMO: 9220988) (hereinafter the "SHANGHAI" or "the Vessel").

3

*Nalex and Lauritzen entered into a contract for the supply of bunkers.*

7.      On April 23, 2022, Lauritzen, through its agent Deal Energy, requested the supply of 260MT of VLSFO (Very Low Sulphur Fuel Oil) bunkers to the SHANGHAI. Ex. 1, Lauritzen's Bunker Nomination. Lauritzen's nomination called for the quality of the bunkers to confirm to ISO 8217:2010 ("ISO 8217") specifications.[1] Lauritzen's nomination provided that the delivery is for the account of "Lauritzen Bulkers A/S" and lists Nalex as both the "Seller" and "Supplier:"



**REF PLEASANT CORRESPONDENCE NANG / KASPER WE CONFIRM OUR STEM AS FOLLOWS:**

| | |
|---|---|
| **VESSEL:** | SHANGHAI |
| **IMO NO:** | 9220988 |

**ACCOUNT:**
Lauritzen Bulkers A/S
Tuborg Havnevej 15
2900 Hellerup
DENMARK

| | |
|---|---|
| **DELIVERY:** | EX BARGE |
| **OTHER COSTS:** | BARGING $12.11 MT or minimum $13,081.00 |
| | 18% Fuel Surcharge |
| | $0.001/gal LUST tax for MGO-only |
| | $0.00214/gal FOST tax for MGO-only |
| | Out of Port Fees, if Applicable |
| **PAYMENT:** | 30DOD  (30 Days after delivery) The invoice to be sent by e-mail : |
| **SELLER:** | NALEX |
| **SUPPLIER:** | NALEX |

---

[1] ISO 8217 refers to a set of specifications for marine fuel promulgated by the International Organization for Standardization, used routinely in contracts for the sale of marine fuel oil.

4

8.     In response to Lauritzen's nomination, Nalex issued a Confirmation Order dated April 25, 2022 memorializing the terms of the transaction. Ex. 2, Confirmation Order. The Confirmation Order expressly provides that all sales are subject to Nalex's 2018 General Terms and Conditions (hereinafter "General Terms"). Ex. 3, Nalex's General Terms. In its correspondence to Lauritzen providing the Order Confirmation, Nalex similarly advised that its sale of bunkers to Lauritzen is subject to Nalex's "general terms and conditions" and that any confirmations from Lauritzen "stating otherwise are rejected unless expressly agreed to in writing." See Ex. 1.

9.     Nalex's General Terms govern the parties' rights with respect to the subject bunker delivery. Section 1.2 defines the term "Buyer" to mean "the party and/or parties contracting to buy products and/or services as set out in the Seller's Confirmation of Order for Products and/or Services, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable." Ex. 3, General Terms, p. 1, art 1.2. The Confirmation Order provides that "Lauritzen Bulkers A/S" is the "buyer" for the subject sale of bunkers. Ex. 2. Pursuant to Section 7.14, Lauritzen also warranted that it had express authority from the Vessel's owner to purchase the bunkers. Ex. 3, General Terms, p. 1, art 7.14. Accordingly, as a precondition of loading the subject bunkers, Lauritzen for itself and on behalf of the SHANGHAI's owners, jointly and severally agreed to be bound by Nalex's General Terms.

10.     The Confirmation Order requires payment for the bunkers within 30 calendar days of delivery and provides for the accrual of interest on any late payment. Ex. 2, General Terms, p. 6, art 9.4. Additionally, Nalex's General Terms state that "[t]imely payment is

of the essence. [Nalex] shall be absolutely entitled to the payment in full without discount, reduction, counterclaim or set off (whether legal or equitable) . . ..” *Id.*, art. 9.1. Nalex's General Terms further provide that “. . . Buyer shall not be entitled without Seller's consent in writing, to offset any amounts for claims against seller, whether or not these claims are connected, and whether or not they arise out of the contract.” *Id.,* art. 9.2. Accordingly, Lauritzen is therefore bound and obligated to the Confirmation Order and to the General Terms, which were incorporated in the Confirmation Order by express reference and adoption. *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011).

### Nalex supplies bunkers to the Shanghai

11.     In accordance with the Confirmation Order and Nalex's General Terms, Nalex delivered bunkers to the Shanghai on April 25, 2022, at approximately 2:00 PM CST. Coordination of the physical delivery of the bunkers was conducted by Host Agency, LLC, as the local agent of the Vessel, and Kirby Corporation, as Nalex's delivery agent and barge contractor.

12.     To ensure that the bunkers met ISO 8217 quality standards specified in Lauritzen's Bunker Nomination, a Kirby's barge tankerman collected a primary sample of the bunker fuel supplied to the Shanghai from the barge's vessel manifold. See Ex. 3, art 5.4. From the primary sample, three representative samples were extracted for purposes of resolving any commercial disputes between the parties and one sample was extracted to verify conformity with the permissible emission limits of Annex VI of MARPOL 73/78. The samples were sealed and labelled with serial numbers according to their respective purpose

and custody – two commercial samples were retained by Nalex, and the other commercial sample was given to the SHANGHAI's Chief Engineer.

13.    A Marine Fuel Delivery Receipt (hereinafter "BDN") was signed by the Vessel's Chief Engineer and stamped with the seal of the Vessel acknowledging receipt of the subject bunkers. Ex. 4, Marine Fuel Delivery Receipt. The BDN also provides the seal numbers for the above-described fuel samples obtained during fuel transfer:

| | |
|---|---|
| BARGE SAMPLE (SUPPLIER): | SEAL # 1191919     1191920 |
| BARGE SAMPLE (VESSEL): | SEAL # 1191918 |
| MARPOL ANNEX VI SAMPLE: | SEAL # 1191917 |
| SAMPLES GIVEN TO CUSTOMER | ☑ YES   ☐ REFUSED |

*Lauritzen complains about the quality of the bunkers*

14.    On April 30, 2022, Lauritzen advised Nalex that the Vessel's owners testing of the supplied bunkers shows cat fines[2] above the tolerable limits of ISO 8217. Specifically, the Vessel owner's test results indicated that the aluminum and silicone levels, typically combined to determine the level of cat fines, was above the threshold amount of 60mg/kg. The sample tested by the Vessel's owners selected laboratory was allegedly collected from the vessel's inlet manifold, not from the barge manifold – the sampling location of the controlling sample as per Nalex's General Terms. See Ex. 3, art 5.6.

15.    The Vessel also unilaterally decided to test its representative "*Vessel*" sample, bearing seal number 1191918. The test results for the "Vessel" sample came back on-spec

---

[2] The presence of cat fines in fuel oil is typically caused by contamination or carryover of catalytic material used in the refining process and evidenced by the presence of aluminum and silicone.

and within permissible levels of cat fines. See Ex. 5, Certificate of Analysis for Vessel Sample. Notwithstanding the on-spec analysis for the bunker manifold sample performed by the Vessel's chosen laboratory, the Vessel and Defendants advise Nalex they would like to conduct further testing in attempt to get a second chance at an off-spec result. See Ex. 6, email correspondence between Nalex and Lauritzen.

16.      Acknowledging that the Vessel's owner's test results for the sampling allegedly obtained from the vessel manifold was not controlling, Lauritzen requested that Nalex suggest an independent laboratory that can complete joint testing of one of the representative samples indicated on the BDN. *Id.* Nalex responded to Lauritzen by proposing AmSpec, Camin Cargo, or Inspectorate as the laboratory to conduct final and binding testing of aluminum and silicone from a representative sample. See *id.*

17.      Lauritzen and the Vessel's owners selected AmSpec to perform joint testing of a sample listed on the BDN. *Id.* Nalex confirmed that AmSpec will perform testing of the "*Supplier*" sample, bearing seal number 1191919, but advise that it would proceed with testing only after it received confirmation from Defendants that AmSpec's results would be final and binding. See Exhibit 6, Nalex's May 2, 2020 email exchange with Lauritzen.

18.      Section 5.4 of Nalex's General Terms provides in part: "*Where reasonably practical, the samples shall be taken in accordance with ISO-8217, but shall otherwise be taken at a point and in a manner chosen by Seller or its representative*." See Ex. 3. Paragraph 4 of ISO-8217 provides that "*samples for quality verification may be taken in any location agreed between the parties*." The parties agree that the sample obtained from

the bunker manifold, bearing seal number 1191919, would be the representative sample to be used for quality verification. *Id.*

19.     Notwithstanding its agreement as to the location of the representative sample, Lauritzen advised Nalex that it would like to reserve its right to contest the finality of AmSpec's testing. Said otherwise, Lauritzen seemingly advised Nalex that if the results came back off-spec, the testing would be final and binding on the parties and Nalex would be liable for its alleged damages, but, conversely, if the testing came back on-spec, Lauritzen reserved its rights to complete further testing. Nalex rejected Lauritzen's self-serving proposal and reiterated that it would proceed with testing *only* if Defendants agreed that it would be final and binding as to the disputed quality concerns. *Id.*

20.     Lauritzen then responded, "*As to the test results being final and binding, we can deal with same as per the supply contract terms.*" *See id.* Nalex confirmed the agreement and once again advised that it would instruct "*AmSpec to test sample #1191919 for [aluminum] and [silicone] only final and binding per supplier terms.*" *See id.* Nalex received no further response from Defendants and proceeded with additional testing on that basis.

### *AmSpec's final and binding analysis confirms the bunkers are on-spec*

21.     AmSpec's test results confirmed that the cat fines levels were within permissible quantities. See Exhibit 7, AmSpec's May 2, 2022 Certificate of Analysis. Upon receipt of AmSpec's analysis, Lauritzen again advised Nalex that the Vessel would like to perform additional testing on the representative sample and also perform further testing of samples obtained from the vessel manifold. See Ex. 8, email correspondence between Nalex and

Lauritzen. Nalex rejected Lauritzen's proposal for additional testing, reiterated that AmSpec's analysis is final and binding on the parties, and advised Lauritzen that it considered the claim closed. *Id.*

22.    Lauritzen now attempts to reject AmSpec's results despite an agreement reached amongst sophisticated commercial parties that the results of AmSpec's testing would be final and binding on the parties. Lauritzen's challenge to the finality of AmSpec's test results is an attempt to renegotiate not only the parties' agreement regarding the testing parameters, but the terms of sale for the supply of the subject bunkers.

23.    Nalex's General Terms, to the extent Lauritzen deferred to the "terms of the supply contract," are equally unambiguous. Section 5.6 of Nalex's General Terms provide that "*[u]nless otherwise agreed to in writing by Seller, only samples provided by Seller to Buyer at the time of delivery shall be deemed representative of the Product delivered.*" Ex. 3. Here, the only samples delivered to the Vessel were those obtained from the bunker manifold. Further, section 5.5 provides that "*[i]f . . . no agreement has been reached by the two parties, Seller reserves the right to have one its retained sealed samples independently analyzed and for the results* **to be final and binding** *upon both parties.*" *Id.* Accordingly, assuming *arguendo* that the parties did not come to an agreement regarding the finality of AmSpec's testing, section 5.5 dictates that Nalex was obliged to select its own independent laboratory to perform testing that was final and binding on the parties. No further testing should be recognized as relevant to this dispute.

10

*Lauritzen is in breach of its contract with Nalex*

24.     The total amount owed by Lauritzen to Nalex for the delivery of the subject bunkers is USD 249,804.58, prior to interest and fees. Ex. 9, Invoice for Payment. Under the 30-day credit terms of the Confirmation Order, the payment deadline for the April 25, 2022, delivery was May 25, 2022. As of the date of filing this Original Complaint, Nalex has not received payment for the bunkers delivered to the SHANGHAI. Consequently, Lauritzen and its agents are in breach of the terms of the subject sale.

25.     Payment of all sums has been duly demanded by Nalex from Lauritzen and the Vessel's Owners. However, to date, the Lauritzen and the Vessel's owners have neglected, failed or otherwise refused to pay the outstanding sum of USD 249,804.58 plus interest and fees, which is indisputably due and owing to Nalex for the bunkers under the Confirmation Order.

## Breach of Maritime Contract against Lauritzen

26.     Nalex repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

27.     At Lauritzen's request, Defendants and Nalex entered into a contract for the purchase and delivery of bunkers to its chartered vessel. Nalex provided bunkers to SHANGHAI pursuant to the terms of the Confirmation Order and its General Terms.  To date, Lauritzen and/or its agents are obligated to pay at least $249,804.58, exclusive of interest, costs, and attorneys' fees, for the provision of goods and services, but has refused to make payment as agreed. Ex. 9.

## Unjust Enrichment/Quantum Meruit against Lauritzen

28.     Nalex repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

29.     In the alternative and without waiving the above, Nalex is entitled to recover the amount due from Lauritzen based upon promises implied by law under the theory of unjust enrichment.  Specifically, Nalex provided bunkers to the SHANGHAI, which goods and services were accepted, used, and enjoyed by the SHANGHAI, and under such circumstances as reasonably notified that Nalex was expecting to be paid.

30.     Lauritzen's acceptance of the subject bunkers but withholding of payment on same constitutes unjust enrichment. The agreed and/or fair and reasonable value and benefit for the bunkers totals at least $249,804.58, exclusive of interest, costs, and attorneys' fees.  Ex. 9.

## Suit on Account against Lauritzen and Deal Energy

31.     Nalex repeats, re-alleges, and incorporates as if fully set forth herein, the foregoing paragraphs.

32.     Nalex brings this suit on a sworn account pursuant to Rule 185 of the Texas Rules of Civil Procedure.  As evidenced by the verified account on file with the Court, Nalex, at the insistence and request of Lauritzen, furnished bunkers to the M/V SHANGHAI.  Said verified account is a liquidated money demand, and a systematic record of account, incorporating charges submitted to Defendants and is a record of business dealings between Nalex and Defendants.  Lauritzen promised and became bound to pay Nalex the sums of money charged on its account. On June 2, 2022, Nalex made written demand on Defendants

12

for payment. Defendants have failed to pay and continue to refuse to pay Nalex the $249,804.58, exclusive of interest, costs, and attorneys' fees.

33.     The bunkers furnished by Nalex were billed to Lauritzen at the reasonable, fair and customary price, and were reasonably worth, at the time of sale and delivery, the sums of the money charged to Lauritzen's account.  As evidenced by the attached invoice, there is a balance due, after all just and lawful offsets, payments and credits, of $249,804.58, exclusive of interest, costs, and attorneys' fees.

### Conditions Precedent

30.     All conditions precedent have been performed or have occurred.

### Reservation of Claims against the M/V SHANGHAI, *in rem,* pursuant to Rule C of the Supplemental Admiralty Rules

31.     Under the Commercial Instruments and Maritime Lien Act, Lauritzen, as charterer of the M/V SHANGHAI, had authority to bind the vessel *in rem* for its purchase of bunkers. *World Fuel Servs. Singapore Pte, Ltd. v. BULK JULIANA M/V*, 822 F.3d 766, 773-74 (5th Cir. 2016). A person providing necessaries to a vessel on the order of the owner, or a person authorized by the owner has a maritime lien on the vessel. 46 U.S.C. § 31342(a)(1). Bunkers or marine fuel are unquestionably necessaries. *ING Bank N.V. v. M/V TEMARA*, 892 F.3d 511, 519 (2d Cir. 2018). Accordingly, pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, Nalex is entitled to arrest the M/V SHANGHAI to satisfy Nalex's claims, including but without limitation to pre-judgment interest, costs, expenses, and attorneys' fees as alleged with more specificity above. 46 U.S.C. § 31342(a)(2).

13

## Waiver

32.    No waiver is intended of any rights or remedies Nalex may have under any agreement among the parties or by law, and such rights and remedies are specifically reserved.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Nalex Energy, LLC prays as follows:

1.    That a judgment be entered in favor of Nalex against Lauritzen Bulkers A/S, J. Lauritzen A/S, J. Lauritzen (U.S.A.), Inc., and Deal Energy A/S for the amounts currently owed, plus attorneys' fees, court costs and additional accrued interest;

2.    That this Court grant Plaintiff such other and further relief to which it may show itself justly entitled at law, in equity, or in admiralty.

Respectfully Submitted,

NICHOLS BRAR WEITZNER & THOMAS LLP

*/s/ Kip Brar*
Kip Brar
Texas Bar No. 24067333
Federal I.D. No. 1055559
2402 Dunlavy Street, Suite 2000
Houston, Texas 77006
Direct: 713-405-3336
kbrar@nicholsbrar.com

*Attorneys for Plaintiff Nalex Energy, LLC*

**Of Counsel:**
NICHOLS BRAR WEITZNER & THOMAS LLP

Misha J. Paltiyevich
Texas Bar No. 24095695

14

Federal I.D. No. 3060542
2402 Dunlavy Street, Suite 2000
Houston, Texas 77006
mpaltiyevich@nicholsbrar.com

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §
§

## <u>VERIFICATION</u>

I am a Partner at Nalex Energy, LLC. I am authorized on behalf of Nalex Energy, LLC to make this statement for and on its behalf, and I make this statement for that reason.

I am over the age of 18 and I am competent to make and swear to the statements made herein. I have personal knowledge of the facts herein stated, and such facts are true and correct and based on my personal knowledge.

I verify that the facts alleged in Nalex Energy, LLC's Verified Original Complaint are true and correct to the best of my knowledge and information based on the records of Nalex Energy, LLC, except as to any matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

The sources of my information are the business records and documents of Nalex Energy, LLC, as well as my own involvement and communication with Defendants and my efforts to collect the debt owed.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, Texas on June 3, 2022

Nang Ngo, Partner
Nalex Energy, LLC

16

## Misha Paltiyevich

| | |
|---|---|
| **From:** | Nang Ngo <nngo@nalexenergy.com> |
| **Sent:** | Monday, April 25, 2022 9:01 AM |
| **To:** | team@deal-energy.com |
| **Cc:** | operation@lauritzenbulkers.dk; operation@lauritzenbulkers.us |
| **Subject:** | RE: REVISED BUNKER NOMINATION - SHANGHAI - NEW ORLEANS - 25 apr 2022 - 28 apr 2022 |
| **Attachments:** | SHANGHAI_NOLA.pdf |

Dear Kasper:

Please find stem confirmation for subject vessel attached. Kindly review your side and advise if any questions or issues.

Please note that seller's general terms and conditions apply to this sale and that any buyers confirmations stating otherwise are rejected unless expressly agreed to in writing.

FYG, spoke with agents and delivery is expected approx 10:00 AM today our time for this vessel. Thanks for your business as always.



Nang Ngo

nngo@nalexenergy.com
ICE: Nngo1
713.960.6656 OFFICE
832.461.7889 MOBILE

Nalex Energy, LLC
4265 San Felipe St. 1100
Houston, TX 77027

**From:** Deal Energy Team <team@deal-energy.com>
**Sent:** Sunday, April 24, 2022 9:02 AM
**To:** Nang Ngo <nngo@nalexenergy.com>
**Cc:** operation@lauritzenbulkers.dk; operation@lauritzenbulkers.us
**Subject:** Re: REVISED BUNKER NOMINATION - SHANGHAI - NEW ORLEANS - 25 apr 2022 - 28 apr 2022

 Hi

Final qty 260 mt.

Seems that agent and vessel are being informed, they are to bunker MGO?
The deal was made basis vlsfo supply, can you pls make sure all is aligned.

Thanks.

Best regards

**Kasper Due Andersen**
Bunker Manager

**DeaL ENERGY A/S**

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8057 • Mobile: + 45 2054 1747
E-mail: team@deal-energy.com
Skype: KD-Andersen
ICE: Kandersen1

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

---

**From:** J. Lauritzen A/S
**Date:** 23/04/2022, 00.19
**To:** Nang Ngo <nngo@nalexenergy.com>, operation@lauritzenbulkers.dk, operation@lauritzenbulkers.us
**Subject:** REVISED BUNKER NOMINATION - SHANGHAI - NEW ORLEANS - 25 apr 2022 - 28 apr 2022

**REVISED NOMINATION**

| BUNKER NOMINATION |  |
|---|---|
| **REF PLEASANT CORRESPONDENCE NANG / KASPER WE CONFIRM OUR STEM AS FOLLOWS:** ||

**VESSEL:**   SHANGHAI
**IMO NO:**   9220988

**ACCOUNT:**
Lauritzen Bulkers A/S
Tuborg Havnevej 15
2900 Hellerup
DENMARK

**PORT:**   NEW ORLEANS
**DATE:**   25 apr 2022 - 28 apr 2022
**AGENT:**   Host Agency, LLC
As Agents Only
365 Canal St, Ste 2500  |  New Orleans, LA 70130
O: 504.469.0731 C: 504.239.6152
neworleans@hostagency.com  |  www.tparkerhost.com

2

**1)** **Qty:** Min 240.000 MT  Max 260.000 MT   **Description:** ISO 8217:2010, Class RMG 380 cst Max 0,50%
Sulphur   **Price:** 900.000 USD/MT

| | |
|---|---|
| **DELIVERY:** | EX BARGE |
| **OTHER COSTS:** | BARGING $12.11 MT or minimum $13,081.00 |
| | 18% Fuel Surcharge |
| | $0.001/gal LUST tax for MGO-only |
| | $0.00214/gal FOST tax for MGO-only |
| | Out of Port Fees, if Applicable |
| **PAYMENT:** | 30DOD  (30 Days after delivery) The invoice to be sent by e-mail soonest possible after the delivery as a PDF file, which shall include the official delivery receipt duly signed by the receiving vessel. |
| **SELLER:** | NALEX |
| **SUPPLIER:** | NALEX |
| **TIME BAR:** | Quality complaints time barred after 30 days from date of delivery, except for hidden added substances which may not be revealed on an ordinary ISO 8217 testing. In such cases the barring to be maximum 30 days after vessel commences burning the fuel. |
| **T + C:** | "BIMCO Terms 2018" to apply unless otherwise agreed |
| **NOTE:** | Fuel will be analysed by an accredited laboratory |

**SANCTIONS:**
By delivering this order, the Seller guarantees that the delivery does not violate any sanctions, including that the fuel oil to be delivered under this nomination does not contain any traces of sanctioned oil.

**MARPOL:**
Delivery to be conducted in accordance with MARPOL Annex VI or local regulation whenever applicable.

**SAMPLING:**
As per guidelines of MEPC.96(47) sampling shall be done at the receiving vessel's inlet manifold or as close hereto as possible. One of the following devices shall be used for the sampling:
- Manual valve-setting continuous drip sampler.
- Time-proportional automatic sampler.
- Flow-proportional automatic sampler.

The sample bottles used shall be counter sealable and receiving vessel shall have the option to counter seal all BDN samples.

In case of problems, delays etc. please inform us on team@deal-energy.com or duty phone no. + 45 3396 8020

Best regards

**Kasper Due Andersen**
Bunker Manager

**DEAL ENERGY A/S**

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8057 • Mobile: + 45 2054 1747
E-mail: team@deal-energy.com
Skype: KD-Andersen
ICE: Kandersen1

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*



**Nalex Energy**
**4265 San Felipe st. 1100**
**Houston TX. 77027**
**Tel: 713-960-6658**

| | |
|---|---|
| To | LAURITZEN BULKERS A/S |
| Attention: | KASPER DUE ANDERSEN |
| Date | 4/25/2022 |

### We Hereby Confirm the following order:

| | | |
|---|---|---|
| Deal Ref | | |
| Vessel | SHANGHAI | IMO 9220988 |
| Port | NEW ORLEANS | |
| ETA | 4/25/2022 | |
| Buyer | LAURITZEN BULKERS A/S | |
| Seller | NALEX ENERGY LLC | |
| Terms | 30 | |
| Broker | 0 | |
| Agent | HOST AGENCY | |
| Delivery Terms | EX-WHARFF | |

| | Spec | Quantity (MT) | Price | |
|---|---|---|---|---|
| **PRODUCT 1** | VLSFO .5% ISO 2017 | 260 | $900.00 | USD PER MT |
| **PRODUCT 2** | | 0 0 | $0.0000 | USD PER MT |

**NOTES:**

***For Calling Instructions St Eustatius Email:*** DL-STNV-SevenSeas@GTIStatia.com

All Sales basis Nalex Energy 2018 GT&C's

Any buyer's confirmation stating or requesting different terms are rejected unless expressly agreed to in writing.

Buyer or buyer's agent must provide 72 hours specific notice of delivery time and location to guarantee delivery. Seller will attempt to make deliveries with less notice on best endeavors basis.

Standard Bolivar roads weather clause applies to all Bolivar deliveries

The Product sold is dyed diesel fuel product for nontaxable use only in accordance with U.S. Internal Revenue Service regulations.

Best Regards,

Nalex Energy

**Nalex Energy, LLC General Conditions of Sale and Delivery effective from September 1, 2018**

**1. Definitions**

1.1 "Seller" shall mean Nalex Energy, LLC, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable. 1.2 "Buyer" shall mean the party and/or parties contracting to buy products and/or services as set out in the Seller's Confirmation of Order for Products and/or Services, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable. 1.3 "Products" shall mean the Fuels, Oils, Lubricants, goods, items, equipment and materials of whatever type and description as specified in the Seller's Confirmation of Order. 1.4 "Services" shall mean agency services, or similar attendance to Buyer's needs. 1.5 "Contract" shall mean an agreement between Seller and Buyer, subject to these conditions. 1.6 "Vessel" shall mean the vessel to which the "Products", and/or "Services" are to be delivered by Seller to Buyer. 1.7 "Conditions" shall mean Seller's General Conditions of Sale and Delivery. 1.8 "Supplier" shall mean the party physically supplying the Products and/or Services to the Vessel, together with his servants, agents, successors, sub-contractors and assigns.

**2. Validity and Scope of Terms**

2.1 These Conditions constitute an integral part of any offer and/or Contract made for Products and/ or Services provided by Seller to Buyer, and override any terms and conditions incorporated or referred to by the Buyer whether in its order or elsewhere. 2.2 The supply by Seller of Products and/or Services and every quotation, pro-forma invoice, order confirmation, price list or other similar documents is made or issued solely subject to these Conditions and no representation or warranty, collateral or otherwise shall bind Seller and no statement made by any representative by or on behalf of Seller shall vary these conditions unless such representation, warranty or statement shall be made in writing and signed by an Officer of Seller and shall be stated to be made specifically in pursuance of this clause 2.2. 2.3 Any variance to these Conditions shall not prejudice or limit in any way the validity of the remaining Conditions of any Contract between Seller and Buyer. Failure by either party at any time to enforce any of these Conditions shall not be considered as a waiver by such party of such provisions or in any way affect the validity of these Conditions. If any provision of the Contract is invalid, void, or unenforceable, it will not affect the validity, legality, or enforceability of any other provision of the Contract. 2.4 Subject to the provisions of Clauses 2.2 and 2.6, and insofar as these clauses apply, these Conditions embody all the terms and conditions and cancel in all respects any previous Conditions, agreements and/or undertakings, whether given in writing or orally. 2.5 No statements made outside the Contract, or in any brochures, catalogues or sales literature, as well as in any correspondence or orally during negotiations, are intended to have any contractual effect. 2.6 Without prejudice to the provisions of Clause 2.2 herein, Seller reserves the right to include, at its discretion, any additional or substitute terms and Conditions. Any additional or substitute terms shall be advised to Buyer prior to the time of concluding the Contract.

**3. Terms of Offers and Contracts**

3.1 Seller's offers and estimates of costs are to be understood as being conditional and subject to availability and alteration and shall include only such services as are expressly specified. 3.2 The Contract shall be deemed to have commenced effective from the time that Seller provides to the Buyer (or its agent, broker or designated representative) notice of confirmation. Any subsequent amendments to the Contract are to take effect as though they had been made as at the date the Seller provided to the Buyer (or its agent, broker or designated representative) notice of confirmation. 3.3 Save where otherwise expressly provided for in the Contract specifications, all particulars notified to Buyer (e.g. analytical data) and all documents to which access has been given regarding the characteristics of the Products at any delivery location, shall not be construed as specifications of the Products to be delivered hereunder, but only as indications of the characteristics of the Products available at that location from time to time, and shall not constitute undertakings. Seller reserves the right to make alterations to such particulars or documents or to the Products. That same provision shall apply to the quality of the Products. 3.4 Referenced commercial terms shall be deemed to have the meaning contained in the most recent edition of Incoterms. 3.5 In the case of imported goods the Contract shall be deemed to be concluded subject to the provision that Seller is granted any export or import licenses which may be necessary. Without prejudice to clause 4.1 below, Buyer shall indemnify Seller for any such expenses incurred in connection with the securing or delay in securing of the aforementioned licenses. 3.6 Seller is entitled to recover from Buyer all direct and indirect losses, costs and expenses incurred as a consequence of cancellation of the Contract by Buyer, for whatever reason.

**4. Prices**

4.1 Unless otherwise specified, prices shall be deemed to be in US dollars, ex-wharf, and shall represent only the purchase price of the Products. Buyer shall pay any additional expenses or costs such as barging, surcharges, overtime,

demurrage, wharfage, dockage, port/harbor fees, dues, duties, taxes, levies and other costs, including those imposed by governments and local authorities. If the price is quoted as "Delivered", the price includes transportation to Buyer's Vessel, but does not include demurrage or any other expenses or costs as indicated above. 4.2 Seller's confirmation to Buyer includes the earliest estimated time of Vessel's arrival (ETA) as advised by Buyer to Seller at the time of nomination. Unless the ETA date range agreed under the Contract is wider than four calendar days, Buyer's Vessel shall begin to take delivery of the Products within the 4-day range of three calendar days after the earliest estimated ETA. The Contract price shall be valid only for deliveries begun within such period. 4.3 If, after Seller's confirmation of the Contract, Buyer begins to take delivery, or requests delivery to begin outside the 4 calendar-day range referred to in clause 4.2 above, Seller shall be entitled to amend its quoted price under the Contract. This entitlement is without prejudice to any claim Seller may have against Buyer for failing to take delivery within the 4 calendar-day range referred to in clause 4.2 above. 4.4 If price controls are imposed, Seller shall not be required to deliver if the maximum price is below that previously established with the Buyer. 4.5 Buyer shall be liable for all costs, expenses and/or charges incurred by the Seller on account of Buyer's failure, breach and/or non-compliance with its obligations under Clause 10 herein. 4.6 Notwithstanding anything else herein, should the Vessel not arrive within the determined time range, the Contract shall be considered null and void unless Seller elects to accept the new arrival date of the Vessel as the basis of a new contract for which a new price can be agreed upon with the Buyer.

**5. Quality**

 5.1 Unless otherwise specified in the Contract, Products shall be of the quality generally offered by Seller to its customers at the time and place of the delivery. ANY IMPLIED CONDITIONS AND WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED AND DISCLAIMED. Buyer, having greater knowledge than Seller of his own requirements, shall have the sole responsibility for the prior selection of the particular grade(s) and acceptance thereof. Products delivered under the Contract shall be segregated from Product(s) already on board the receiving Vessel. Any consequences arising from commingling Products aboard the Vessel shall remain the joint and several responsibility of the receiving Vessel and the Buyer. In any event, the Seller shall not be responsible for any on-board delay or storage failure that may affect the delivery as requested and shall have the right to recover from Buyer any loss, damage or expenses incurred as a result of such failures. 5.3 The Seller can in no circumstances be held responsible for any consequences of the misuse or defective application of the Products if caused by lack of information or misinformation given by the Buyer on the use or application of the Products. 5.4 In order to determine the quality of the Product delivered, Seller shall be entitled to draw or cause to be drawn, samples of each delivery from Supplier's designated facilities, and to have them sealed. Where reasonably practical, the samples shall be taken in accordance with ISO-8217, but shall otherwise be taken from a point and in a manner chosen by Seller or its representative. At least one of the samples will be handed to the master of the Vessel which has received the delivery. Any remaining samples will be retained by Seller. In the event of a quality complaint, Seller shall seek to agree with Buyer upon the appointment of an independent inspector to undertake an analysis of one of the retained samples. Method ISO- 4259, which covers the use of precision data in the interpretation of test results, shall be used in all cases of dispute. In instances where MARPOL Annex VI applies to the supply effected, the sample accompanying the Bunker Delivery Note pursuant to Regulation 18(6) of MARPOL Annex VI should, where reasonably practical, be drawn in accordance with Resolution MEPC.96(47). 5.5 If, after 21 calendar days from the date that Buyer registers a quality complaint to Seller, no agreement has been reached between the two parties, Seller reserves the right to have one of its retained sealed samples independently analyzed and for the results to be final and binding upon both parties. The cost of any analysis shall be borne by Buyer, unless the complaint as to the quality is shown to be justified. 5.6 Unless otherwise agreed to in writing by Seller, only samples provided by Seller to Buyer at the time of delivery shall be deemed representative of the Product delivered. 5.7 In any event, the Seller's obligation hereunder shall not exceed the direct expenses incurred for the removal and replacement of the Products, and shall not include any consequential or indirect damages, including, without limitation, demurrage claims, loss of opportunity or loss of profit. Should the Buyer remove the Products without the prior consent of the Seller, all such costs incurred in doing so shall be for Buyer's account.

**6. Quantity**

6.1 All quantities referred to in the Contract are understood to be approximate with a margin of 10 per cent more or less at Seller's option. 6.2 Except where government regulations or local authorities determine otherwise, the quantity of Product shall be determined from the official gauge/sounding of the delivering barge, road wagon, or rail tank car, delivery note for drum deliveries, or by gauging in Supplier's shore tank or by Supplier's flow meter, at Seller's election. Adjustment in volume owing to difference in temperature shall be made in accordance with API/ASTM+IP petroleum measurement standards for generalized Products (table 6B, 24B, or 54B depending on port location). In the

measurement of marine fuel, Seller shall make allowances for all water and non-petroleum sediment in excess of one percent (1%), or any other percentage mutually agreed to between Buyer and Seller. Buyer may be present or represented by a properly accredited agent when such measurements are taken. If Buyer is not present or represented, then Seller's determination of quantities shall be deemed to be correct and conclusive.

**7. Deliveries and Risk**

7.1 Vessels shall be supplied as promptly as circumstances permit. Any supply date within the Contract is not guaranteed, and time shall not be of the essence in respect thereof. Seller shall not be liable for demurrage or for any losses due to congestion at Supplier's storage or delivery facilities or due to any prior commitment of available transportation. 7.2 The Seller's obligation to make any delivery hereunder is subject to the availability to the Seller at the port at which delivery is requested of the particular grade of Products requested by the Buyer. If, as a result of any events, matters or things referred to in Clause 15 hereof, or any, other foreseeable or unforeseeable event, including contractual changes relating to the supply of crude oil and/or petroleum products from which the Products of the type to be sold hereunder are derived, supplies of the Products are curtailed, or are available to the Seller only under conditions which, in Seller's sole judgment are deemed unacceptable, the Seller may allocate, on any fair and reasonable basis according to its own discretion, its available supplies of Products to meet its own requirements and those of its subsidiaries and affiliated companies and other customers. The Seller shall not be required to increase supplies from some other source or supply, or to purchase Products to replace the supplies so curtailed, or to make up deliveries omitted during the period of disruption, nor will the term of the Contract be extended due to any event occurring under this Clause of Clause 15 herein. 7.3 If Buyer causes delays to Supplier's delivery facilities in the receiving of Products, Buyer shall be liable to reimburse Seller for any and all costs incurred. 7.4 Seller shall not be required to deliver Products into any vessel's tanks which are not normally used for such Product. 7.5 If any government or local port license or permit is required for deliveries hereunder, each party must comply as applicable. In case of Buyer's failure to comply, Seller shall not be required to deliver, and will be entitled to recover all costs and consequences related thereto from Buyer. 7.6 Delivery shall be made either from a shore terminal or by barge or by any other accredited methods of delivery, where such deliveries are available from time to time. In the case of more than one method of delivery being available, Seller shall at its sole discretion select one, providing that it does not breach any other conditions of the Contract. 7.7 Buyer shall provide free of cost a clear safe berth, position or anchorage alongside the vessel receiving lines. Seller shall be under no obligation to make deliveries when in its sole opinion a clear and safe berth, position or anchorage is not available. Buyer shall indemnify Seller against all claims and expenses for any loss, damage, demurrage or delay caused to Seller's delivery equipment, irrespective of whether the circumstance causing the loss, damage, demurrage or delay was within the control of Buyer or his local representative. 7.8 The Buyer shall make all connections and disconnections between pipelines or delivery hoses and Vessel's intake lines and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly all deliveries hereunder. In no case shall the Seller be liable for any damage or delay resulting from causes beyond its control or avoidable by care on the part of the Buyer or the Vessel. 7.9 Delivery shall be deemed to have been completed and risk transferred as the Product passes the flange connecting the pipelines or delivery hoses with the intake lines of the Vessel at which point Seller's responsibility shall cease. Products supplied by other methods shall be considered to be delivered when passing the Vessel's rail. Buyer shall assume all risks including loss, damage, deterioration, depreciation, evaporation, shrinkage as to the Products so delivered. 7.10 Upon completion of the delivery to the Vessel, the master, or authorized representative of Buyer shall confirm the delivery by signing a receipt, provided by Seller or his contractor at that time. Seller shall not be deemed to have any constructive knowledge of the authority or lack of authority of any purported local representative of Buyer and shall be under no duty to verify authority of such purported representative. The acceptance of the aforesaid signed receipt in good faith by Seller shall bind Buyer. 7.11 If Buyer fails to take delivery of the product or any part thereof within a reasonable time from the agreed supply time, Seller shall be entitled at Buyer's risk and expense, either to transport the product back to storage or to sell in a downgraded form at a market price without prejudice to Seller's other rights under this Contract for damages. Seller shall at its sole discretion determine what constitutes a reasonable time to terminate the delivery. 7.12 Delivery shall be made during normal working hours. Unless otherwise agreed deliveries outside normal working hours shall be subject to additional costs which shall be borne by Buyer. 7.13 Seller may elect to discontinue operations at any delivery location for any reason without obligation to Buyer. 7.14 Products and Services delivered under a Contract shall be made not only on the account of Buyer but also on the account of the receiving Vessel. The Buyer warrants that the Vessel's owner has given the Buyer express authority to purchase the Products. The Buyer further warrants that the Seller has the right to assert and enforce a lien in accordance with Clause 18.1 herein against the receiving Vessel or any sister or associated Vessel for

the amount of the Products and Services provided, plus without limitation, contractual interest pursuant to Clause 9.4 herein and any other expenses related to enforcement of the lien. The Buyer expressly warrants that he has the authority of the Vessel's owner to pledge the Vessel's credit as aforesaid. The Vessel is ultimately responsible for the debt incurred through the Contract. The Supplier's right to apply and enforce a maritime lien will not be altered, waived or impaired by the application to the Bunker Delivery Note of any disclaimer stamp.

**8. Claims**

8.1 Any claims made by Buyer regarding shortages in quantity must be made in writing to Seller at the time and place of delivery. Seller has the option to leave delivery equipment connected to the vessel at Buyer's expense until a quantity dispute has been resolved to Seller's satisfaction. 8.2 Any claims made by Buyer with regard to quality must be made in writing to Seller immediately upon detection of the alleged defect, and in any event no later than within fourteen (14) calendar days from receipt of the Product. The foregoing preliminary notice shall be followed by a formal written notice of claim, within thirty (30) calendar days from receipt of the product, to Seller containing all details necessary to allow evaluation of the claim. 8.3 In any event, should Buyer fail to present a claim in writing to the Seller as to quantity or quality within thirty (30) calendar days of the date of receipt of the Product, any such claim by the Buyer shall be deemed to be waived and absolutely time-barred. The Buyer's submission of any claim hereunder does not relieve it of the responsibility to make payment in full for the Products supplied by the Seller. This provision shall survive a termination of the Contract.

**9. Payment**

9.1 Irrevocable payment shall be made by Buyer in full, as directed by Seller, within the time specified in the Contract. Timely payment is of the essence. Seller shall be absolutely entitled to the payment in full without discount, reduction, counterclaim or set off (whether legal or equitable) and free of bank charges, which shall be made to Seller's bank account. Should the due date for payment fall on a Saturday, Sunday or Public Holiday, then payment should be received by the previous working day. 9.2 When paying, Buyer shall not be entitled without Seller's consent in writing, to offset any amounts for claims against seller, whether or not these claims are connected, and whether or not they arise out of the contract. 9.3 Unless otherwise agreed, payment shall be made by irrevocable telegraphic transfer. Delivery documents shall be provided to Buyer, wherever possible, however payment shall not be conditional upon receipt of such documents, unless specifically agreed at the time of concluding the Contract. 9.4 Overdue payments shall be subject to an interest charge of 2% per thirty (30) calendar day period compounded, or the maximum rate permitted under applicable law, running from the due date of payment. 9.5 All payments received by the Seller from the Buyer, notwithstanding any specific request to the contrary, shall be applied in the following order in diminution or extinction of: a) Contractual interest b) Financial charges incurred by Seller as a result of Buyer's late payment (if any) c) The principal sum in respect of Products/Services supplied by Seller to the Buyer 9.6 Should Products and/or Services be ordered by a broker or agent then such broker or agent as well as Buyer shall be bound to and be liable for all obligations as fully and as completely as if it were itself a Buyer whether such principal be disclosed or undisclosed and whether or not such broker or agent purports to contract as brokers or agents only, but in all such cases the said broker or agent shall not have any rights against Seller. 9.7 If Buyer is in default of the full payment, or if its financial condition, or that of a subsidiary, parent, associate or affiliate, in Seller's sole opinion becomes impaired, or if proceedings in bankruptcy or insolvency are instituted by and/or against Buyer, its subsidiary, parent, associate, related or affiliate company of the Buyer, or in the case of liquidation or dissolution of Buyer, or of a subsidiary, parent, associate, related or affiliate company of the Buyer, or any other reason at Seller's sole discretion, any and all postponed or deferred payments including interest thereon, shall become immediately due and payable and Seller reserves the right to offset the same against any debts due to Buyer or its parent or its subsidiary companies, affiliates, associated or related companies. Exercise of any such rights shall be without prejudice to Seller's right to recover damages or losses sustained and resulting from any default by Buyer, and Seller shall have the right to suspend/and to cancel deliveries hereunder.

**10. Notice**

10.1 Buyer shall give Seller directly, or through Buyer's agent at least 72 hours notice (Saturday, Sunday and local holidays excluded) of vessel's readiness to receive delivery and exact quantity required to enable Seller to make necessary arrangements for the delivery. 10.2 Buyer shall give Seller final notice of requirement directly or through Buyer's agent at least 48 hours (Saturday, Sunday and local holidays excluded) before loading marine fuels into barge or other accredited methods of transportation.

**11. The Vessel and The Environment**

11.1 It shall be the sole responsibility of Buyer to comply, and advise its personnel, agents and/or customers to comply, both during and after delivery, with all health and safety requirements and all environmental regulations and legislation,

both national and international, applicable to the Products supplied. Seller accepts no responsibility for any consequences arising from failure to comply with such health and safety requirements or environmental regulations and legislation.. Buyer acknowledges familiarity with the hazards inherent in the nature of any petroleum Products, and shall protect, indemnify and hold Seller harmless against any claims or liability incurred as a result of Buyer, or any user of the Products, or its customers, failing to comply with the relevant health and safety requirements or environmental regulations and legislation 11.2 Without prejudice to Clause 7.9 herein, in the event of any leakage, spillage, overflow of Product causing or likely to cause pollution occurring at any stage, Buyer shall, regardless as to whether Buyer or Seller is responsible, immediately take such action as is necessary to remove the Product and mitigate the effects of such leakage, spillage or overflow. Failing such prompt action, the Buyer (who hereby warrants that they have been authorized by the Vessel's owners) authorizes Seller to take whatever measures Seller deems fit to effect clean-up at the Buyer's expense and on the Buyer's behalf and the Buyer shall cooperate fully with the Seller and lend all assistance required in the cleanup operation. The Buyer shall indemnify and hold Seller and/or Supplier harmless against any claims or liability, expenses, damages, costs, fines and penalties arising out of or in connection with any leakage, spillage or overflow unless such leakage, spillage or overflow shall be proven to be wholly caused by Seller's gross negligence. The Buyer shall also give, or cause to be given, to the Seller all such documents and other information concerning any leakage, spillage or overflow, or any program for the prevention thereof, or which are requested by the Seller, or required by law or regulation applicable at the time and place where delivery of the Products to the Vessel takes place. 11.3 Buyer warrants that the vessel at all material times will be in compliance with all national and international regulations. Buyer also warrants that the Vessel, her main engine, her auxiliary engines and all other parts, equipment, and machinery, are being operated in accordance with the manufacturer's specifications, instructions and guidelines. The Buyer further warrants that the Product to be supplied to the Vessel is suitable for the Vessel, her parts, her equipment and machinery as set out in the manufacturer's specifications, instructions and guidelines. It shall be the responsibility of the Master of the Vessel to notify Seller of any special conditions, difficulties, peculiarities, deficiencies or defects with respect to the Vessel or any part thereof, which might adversely affect the delivery of Product. Seller has the right to refuse to deliver the product to the Vessel if it is deemed probable in Seller's sole discretion that such delivery will result in adverse consequences of any kind whatsoever.

## 12. Assignments

12.1 Seller may assign/transfer any/all of its right and obligations under the Contract. Buyer shall not assign/transfer any/all of its right under the Contract, without written consent of the Seller.

## 13. Indemnity

13.1 Without prejudice to Clauses 3.6, 11.1 and 11.2 herein, the Buyer shall defend, indemnify and hold Seller harmless with respect to any and all liability, loss, claims, expenses, or damage whatsoever that the Seller may suffer or incur by reason of, or in any way connected with, the fault or default of Buyer, its employees, servants, officers, or crew of the Vessel, agents and representatives in the purchase of, receipt, use, storage, handling or transportation of the Products.

## 14. Liability and Consequential Damages

14.1 The Seller and/or Supplier shall not be liable for any special, indirect, consequential, punitive or exemplary damage of any kind including but not limited to loss of prospective profits, anticipated cost savings, contracts or financial or economic loss, claims in tort including negligence of the Seller and/or Supplier, its agents, servants or sub-contractors, arising out of, or in connection with, the performance or nonperformance under the Contract. In any event, the liability of the Seller and/or Supplier shall be limited to the price of the Products supplied under the Contract.

## 15. Force Majeure

15.1 Neither Buyer nor Seller shall be responsible for damages caused by delays, failure to perform in whole or in part any obligation hereunder (other than the payment of money), or non-compliance with any of the terms hereof when such delay, failure or non-compliance is due to or results from causes beyond the reasonable control of the affected party, including without limitation acts of God, fires, flood, adverse weather, perils of the sea, war (declared or undeclared), terrorist actions (threatened or actual), embargoes, accidents, strikes, labor disputes, failure of, or shortage of vessels, or barge services normally available to Seller, breakdown of or damage to, or shortage in facilities used for production, refining or transportation of Products, acts in compliance with requests of any government authority or person purporting to act on behalf thereof, or any similar causes. Notwithstanding the provisions of this clause, the Buyer shall not be relieved of any obligation to make payments for all sums due hereunder.

## 16. Breach

16.1 Seller may terminate the Contract in whole or in part, at its own discretion upon the breach of any provision hereof by Buyer. 16.2 Seller reserves the right to recover from Buyer all damages and costs (including but not limited to loss of profit) resulting from any breach of the Contract.

**17. Title**

17.1 The products shall remain the Seller's property until Buyer has paid for them in full. Until that time, Buyer shall hold them as bailee, store them in such a way that they can be identified as Seller's property, and keep them separate from Buyer's own property and the property of any other person. Although the Products remain the Seller's property until paid for, they shall be at Buyer's risk from the time of delivery and Buyer shall insure them against loss or damage accordingly and in the event of such loss or damage it shall hold the proceeds of such insurance on behalf of Seller as trustee of Seller. 17.2 Buyer's rights to possession of the Products shall cease if: a) Buyer has not paid for the Products in full by the expiry of any credit period allowed by the Contract; or b) Buyer is declared bankrupt or makes any proposal to his creditors for a reorganization or other voluntary arrangement; or c) A receiver, liquidator or administrator is appointed in respect of Buyer's business. 17.3 Upon cessation of Buyer's right to possession of the Products in accordance with clause 17.2, the Buyer shall at his own expense make the Products available to the Seller and allow Seller to repossess them. 17.4 Buyer hereby grants Seller, his agents and employees an irrevocable license to enter any premises where the Products are stored in order to repossess them at any time.

**18. Governing Law**

18.1 This Agreement is subject to General Maritime Law of the United States of America, place of jurisdiction the United States of America, or any other law and jurisdiction as specified in the Contract. However, nothing in this clause shall preclude Seller, in event of a breach of this Agreement by the Buyer, from taking any such action or actions as it shall in its absolute discretion consider necessary to enforce, safeguard or secure its rights under this Agreement in any court or tribunal of any state or country, including, but not limited to the action to enforce its rights of lien against ships, the existence and procedure of enforcement of such right of lien being determined by the local law of the place where enforcement is sought, or to otherwise obtain security by seizure, attachment or arrest of assets for any amount(s) owed to Seller

# V-Marine Fuels

## MARINE FUEL DELIVERY RECEIPT

VITOL INC • 2925 Richmond Ave. • Houston, TX 77098

telephone (713) 230-1111 • fax (713) 230-1008 • email CASHCONFIRMSHOU@VITOL.COM

| VESSEL NAME: SHANGHAI | IMO #: 9220988 | BARGE NAME: Kirby 27735 | DATE: 4-25-22 |
|---|---|---|---|

| LOADING TERMINAL LOCATION: IMH St Rose | DELIVERY LOCATION: Nola 9mile Anch, M/B 82.9 |
|---|---|

| PRODUCT | GROSS BBLS | NET BBLS | WEIGHT M. TONS |
|---|---|---|---|
| VLSFO | | 1759.88 | 260.41 |
| | | | |
| | | | |

### PROPERTIES

| GRADE | VISCOSITY CST AT 50°C/122°F | API AT 15°C | DENSITY AT 15°C | TEMP °F | FLASH °F | POUR °F | WATER %Vol. | SULPHUR % M/M | | DATE | TIME |
|---|---|---|---|---|---|---|---|---|---|---|---|
| VLSFO | 20.92 | 20.2 | 932.2 | 76.5 | >230 | | 0.05 | 0.485 | BARGE ALONGSIDE | 4-25 | 1415 |
| | | | | | | | | | HOSE CONNECTED | 4-25 | 1535 |
| | | | | | | | | | STARTED PUMPING | 4-25 | 1550 |
| | | | | | | | | | FINISHED PUMPING | 4-25 | 1815 |
| | | | | | | | | | HOSE DISCONNECTED | 4-25 | 1835 |
| | | | | | | | | | BARGE AWAY | 4-25 | 1905 |

The marine fuel described herein is delivered in accordance with Vitol Inc.'s Standard Terms and Condition of Sale (a copy of which has been provided to buyer prior to delivery) and on credit of the vessel. Any disclaimers as to the creation of a maritime lien in the amount of the purchase price and delivery charges and/or restrictions as to the authority of the ship's officer signing this Receipt to bind the vessel and her owner to the above are null and void, unless an authorized represenative of Vitol Inc. shall have otherwise agreed in writing at the time Buyer initially orders the marine fuel. Failing such agreement, delivery shall, under no circumstances, constitute a waiver by Vitol Inc. of the above.

**REMARKS:**

BARGE SAMPLE (SUPPLIER): SEAL # 1191919    1191920

BARGE SAMPLE (VESSEL): SEAL # 1191918

MARPOL ANNEX VI SAMPLE: SEAL # 1191917

SAMPLES GIVEN TO CUSTOMER ☑ YES ☐ REFUSED

| GAUGES WITNESSED BY SHIP'S REPRESENTATIVE | |
|---|---|
| ☐ BEFORE ☐ AFTER ☑ DECLINED | |

DELIVERING COMPANY: Kirby Inland

BY: Barge Kirby 27735

DATE: 4-25-22

DECLARATION OF MASTER/CHIEF ENGINEER
I declare that the information given above is true and correct to the best of my knowledge and belief; that I have knowledge of the facts set forth herein; that the articles described in this notice of lading were received in the quantitites stated, from the person, and on the date, indicated above; that said articles were laden on the vessel named above for use on said vessel as supplies, except as noted below.

Received for use as bunkers, together with representative sample, the quantities shown above. Exact quantities shown above are subject to correction in case of error.

MASTER/CHIEF ENGINEER: _____ CHE NO DOCFO EUCIUANES JN

DATE: 4-25-22

### SUPPLIER'S DECLARATION

Declaration that bunker fuel supplied conforms with MARPOL Annex-VI

We declare that the bunker fuel supplied conforms with Regulation 18.3 of this Annex and that the Sulphur content of the fuel oil supplied does not exceed: Please mark (x) in the applicable box(es) below

☑ the limit value given by Regulation 14.1 of this Annex;
☐ the limit value given by Regulation 14.4 of this Annex; or
☑ the purchaser's specified limit value of (%m/m), as completed    0.50

by the fuel oil supplier's representative and on the basis of the purchaser's notification that the fuel oil is intended to be used in compliance with MARPOL Annex VI.

For _____

**VITOL INC.**

Company's Name

Signature of Cargo Officer

John Bullock

Full Name in Block Letters

**M/V UNCLE SAM**

Bunker Tanker's Stamp

**intertek**

# caleb brett

## Report of Analysis

Lintec Testing Services Ltd.

Intercompany Accountant - UK010
PO Box 6279
Intertek AP Processing
Milton Keynes, BUCKS MK10 1YT
United Kingdom

Our Reference Number: BA100-0009494
Lab Reference Number: 2022-BHMS-000178
Customer Reference Number: 9220988

| | | | |
|---|---|---|---|
| **Sample ID :** | 2022-BHMS-000178-001 | **Date Sample Taken :** | 25-Apr-2022 03:56 |
| **Sample Designated As :** | FUEL OIL | **Date Submitted :** | 04-May-2022 12:48 |
| **Taken From :** | SHANGHAI | **Date Tested :** | 05-May-2022 |
| **At :** | Borco Terminal, Freeport, , Bahamas | **Drawn By :** | Client |
| **Representing :** | Shanghai - External Sample Line  Submitted Sample | | |

| Method | Test | Result | Units |
|---|---|---|---|
| IP 501M | Aluminium | 15 | mg/kg |
| | Silicon | 19 | mg/kg |
| | Aluminium + Silicon | 34 | mg/kg |

This report has been reviewed for accuracy, completeness, and comparison against specifications when available.  The reported results are only representative of the samples submitted for testing.  This report shall not be reproduced except in full without approval of the laboratory.

Signed By: _____

Graehaem Rettie, Laboratory Manager

Date: 5 May, 2022 _____



4504312

Page 1 of 1

BORCO Lab Building, W Sunrise Highway, P.O. Box F42428 Freeport, Grand Bahama Bahamas
Tel.: +1 (242) 351-6474 Fax.: +1 (242) 351-2989 Email: bhms.ship@intertek.com

05-May-2022  06:39

BA100-0009494

**Misha Paltiyevich**

| | |
|---|---|
| **From:** | Nang Ngo <nngo@nalexenergy.com> |
| **Sent:** | Monday, May 2, 2022 10:33 AM |
| **To:** | team@deal-energy.com; Bunkers |
| **Cc:** | operation@lauritzenbulkers.dk; legal@j-l.com |
| **Subject:** | RE: RE: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel |

Hi Lucas/Mathias:

Well received below. We will instruct Amspec to test sample #1191919 for Al+Sil only final and binding per supplier terms. Pictures will be taken before and after of seal break. I will send the pictures and results to you in approx. 10 hours soon as they are ready.



Nang Ngo

[nngo@nalexenergy.com](mailto:nngo@nalexenergy.com)
ICE: Nngo1
713.960.6656 OFFICE
832.461.7889 MOBILE

Nalex Energy, LLC
4265 San Felipe St. 1100
Houston, TX 77027

All offers are basis seller's GT&C's

---

**From:** Deal Energy Team <team@deal-energy.com>
**Sent:** Monday, May 2, 2022 9:43 AM
**To:** Nang Ngo <nngo@nalexenergy.com>; Bunkers <Bunkers@nalexenergy.com>
**Cc:** operation@lauritzenbulkers.dk; legal@j-l.com
**Subject:** Re: RE: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Hi Nang,

Thank you for your last

Do note that delays to the vessel because of delay in sample testing will not be for Buyers' account.

As to the test results being final and binding, we can deal with same as per the supply contract terms.

Please confirm the necessary instructions have been provided to the lab.

Best regards

1

**Lucas Volkinsfeld**
Bunker Manager

**DeaL ENERGY A/S**

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com
Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

---

**From:** Nang Ngo <nngo@nalexenergy.com>
**Date:** 02/05/2022, 16.19
**To:** team@deal-energy.com <team@deal-energy.com>, Bunkers <Bunkers@nalexenergy.com>, operation@lauritzenbulkers.dk <operation@lauritzenbulkers.dk>, J. Lauritzen - Legal <legal@j-l.com>
**Subject:** RE: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Hi Lucas, confirmed seal #1191919 is the official sample from the BDN (attached). This sample has been segregated and will be picked up by Amspec shortly pending our further instructions.

Please note that we can only test this sample once you agree that results will be final and binding. We feel confident that the fuel is indeed on-spec and want to show that to owners for their information so they can confidently burn this fuel to next port of call and bring this claim to resolution. If the final and binding results come back off spec we will quickly coordinate to take the fuel off and resupply this vessel with on spec fuel and handle any related costs. Time is of the essence to mitigate any potential costs. Await yours.



Nang Ngo

nngo@nalexenergy.com
ICE: Nngo1
713.960.6656 OFFICE
832.461.7889 MOBILE

Nalex Energy, LLC
4265 San Felipe St. 1100
Houston, TX 77027

All offers are basis seller's GT&C's

2

**From:** Deal Energy Team <team@deal-energy.com>
**Sent:** Monday, May 2, 2022 9:00 AM
**To:** Nang Ngo <nngo@nalexenergy.com>; Bunkers <Bunkers@nalexenergy.com>
**Cc:** operation@lauritzenbulkers.dk; J. Lauritzen - Legal <legal@j-l.com>
**Subject:** Re: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Hi Nang,

Thank you for your swift reply and for the confirmation that pictures will be provided.

Owners have thus far not informed that they will be of the intention to send any representatives.

Please reconfirm #1191919 is a BDN sample number. Can you please forward the BDN?

Buyers will have to reserve their rights in respect of the sample test being final and binding, which we hope you will understand.

Please provide us with test results as soon as they become available.

Best regards

**Lucas Volkinsfeld**
Bunker Manager

# DeaL ENERGY A/S

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com
Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

**From:** Nang Ngo <nngo@nalexenergy.com>
**Sent:** 02-05-2022 15:36:12
**To:** team@deal-energy.com <team@deal-energy.com>,Bunkers <Bunkers@nalexenergy.com>
**Cc:** operation@lauritzenbulkers.dk <operation@lauritzenbulkers.dk>
**Subject:** RE: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Good Day Lucas, all below is well received. We understand that we are on notice for costs related to supply of alleged off spec fuel, including delays/resupply etc if test of the official sample is confirmed off spec in our final and binding test.

Regarding your request for full ISO spec, please note per our discussion, that basis our GT&C's we will only test the parameter claimed to be off spec for final and binding analysis. Please confirm that you agree to final and binding analysis of Al+Sil via AmSpec Lab, with no witness present (we will not have witness present either), photos to be provided of seal break before and after (Official Seal Sample #1191919). Note that testing will take approx. 10 hours from your confirmation.

I have supplied COA for the tank that loaded barge 27735 along with analysis of barge 27735 after load for your reference.

Await yours.



Nang Ngo

nngo@nalexenergy.com
ICE: Nngo1
713.960.6656 OFFICE
832.461.7889 MOBILE

Nalex Energy, LLC
4265 San Felipe St. 1100
Houston, TX 77027

All offers are basis seller's GT&C's

**From:** Deal Energy Team <team@deal-energy.com>
**Sent:** Monday, May 2, 2022 6:24 AM
**To:** Nang Ngo <nngo@nalexenergy.com>; Bunkers <Bunkers@nalexenergy.com>
**Cc:** operation@lauritzenbulkers.dk
**Subject:** Re: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Hi Nang,

Further to below please be advised vessel is now slow steaming towards Freeport, Bahamas where we are looking into securing 260 mts VLSFO at market price, potentially having to wait due to avails - we cannot risk running the ship on the fuel which was supplied by you prior official testing has been done.

When will you expect the bunker sample to be tested and when are the results ready? Again, full ISO spec to be tested as per owners and our request.

Furthermore, please advise BDN sample seal no to be tested and that same is tested asap.

Finally, as vessel is on a voyage towards Europe(Rotterdam for orders) we need the above-mentioned bunkers in order to reach dis-port safely and complete subject voyage.

We have to put you on notice for time loss, additional bunkers to be bought and any other consequence with regards to have been supplied with the offspec bunkers (Catfines of 118 mg/kg).

Looking forward to receiving your comments to above asap.

All rights reserved.

Thank you.

Best regards

**Lucas Volkinsfeld**
Bunker Manager

**DeaL ENERGY A/S**

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com
Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

---

**From:** J. Lauritzen A/S
**Sent:** 01-05-2022 21:03:12
**To:** nngo@nalexenergy.com,bunkers@nalexenergy.com
**Cc:** operation@lauritzenbulkers.dk
**Subject:** Re: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Dear Nang,

please note below received from Owners:

*

Please confirm Amspec lab with ability of photographic witnessing of seal breaking. Owners do not plan to send any rep to be physically present. Please request to test fuel on main "fingerprint" parameters in addition to AL+SI to be able to verify if fuel in suppliers sample is of the same batch / origin of the ships.

Please revert with seal number of the intended sample to be tested. Same must match one listed in official BDN. **

Please revert to above.

Thank you.

Best regards

**Lucas Volkinsfeld**
Bunker Manager

**DeaL ENERGY A/S**

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com
Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

---

**From:** J. Lauritzen A/S
**Sent:** 01-05-2022 08:16:31
**To:** nngo@nalexenergy.com,bunkers@nalexenergy.com
**Cc:** operation@lauritzenbulkers.dk
**Subject:** Re: Re: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Hi again,

We will be checking with owners about witness and get back asap with comments.

Tks.

Best regards

**Lucas Volkinsfeld**
Bunker Manager

# DEALENERGY A/S

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com
Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

---

**From:** Nang Ngo <nngo@nalexenergy.com>
**Date:** 01/05/2022, 01.52
**To:** team@deal-energy.com <team@deal-energy.com>, Bunkers <Bunkers@nalexenergy.com>, operation@lauritzenbulkers.dk <operation@lauritzenbulkers.dk>
**Subject:** Re: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Hi Lucas very surprised to hear this result as we have not had this issue with any other deliveries. Please select from Amspec, Camin or Inspectorate for testing Al+Sil final and binding. We will segregate the official samples and await your instructions. Also please advise if a witness is required or if pictures before and after of seal break will suffice.

-NN

On Apr 30, 2022, at 5:03 PM, Deal Energy Team <team@deal-energy.com> wrote:

Namg/Lucas,

Attached please the test result from the bunkering at NOLA, showing catfines off by above 100 mg/kg.

We hereby put you on notice for the off-spec bunkers supplied.

Kindly revert with an suggestion of lab for urgent testing, as Vessels remaining bunker stock is very low.

Will await yours asap.

Do you have any locations in or around GOLA?

Vsl currentlt west of Florida.

Best regards

**Lucas Volkinsfeld**

Bunker Manager

**DeaL** ENERGY A/S

- As agents only

DeaL Energy A/S

15, Tuborg Havnevej • 2900 Hellerup • Denmark

Tel: + 45 3396 8027 • Mobile: + 45 2840 7653

E-mail: team@deal-energy.com

Skype: lucas.volkinsfeld

ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

8

**From:** Lauritzen Bulkers A/S, CPH - Operations <operation@lauritzenbulkers.dk>

**Date:** 30/04/2022, 21.48

**To:** team@deal-energy.com

**Subject:** Fwd: ***URGENT / MV SHANGHAI / LAURITZEN / CP - 14th April 2022 - offspec fuel

Dear Team / Christian

Good day.

Re: MV Shanghai / Bunker Test

Kindly find forwarded email and attachment from Owners showing excess of Aluminium + Silicon in Fuel supplied in Miss River.

Best regards,

**Christian D. Lauritzen**

Intern • CPH Operations

**Lauritzen** Bulkers

**LAURITZEN** BULKERS

J. Lauritzen A/S
15 Tuborg Havnevej • 2900 Hellerup • Denmark

Tel: + 45 3396 8326 • Mobile: + 45 5219 6489

Dept. E-mail: operation@lauritzenbulkers.dk

www.lauritzenbulkers.com

...................................................................................

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

...................................................................................

`From:` Hristina Nikolova SSY Postfix <postfix@ssy.co.uk>

`Sent:` 30/04/2022 21:24:47

`To:` Lauritzen Bulkers A/S, CPH – Operations <operation@lauritzenbulkers.dk>

`Subject:` ***URGENT / MV SHANGHAI / LAURITZEN / CP – 14th April 2022 – offspec fuel

Dear Christian / Hristina

Good day,

Please note following received from owners:

+++

Please note charterers bunkers stemmed on 25/04/2022 at NOLA has been tested by head owners and has been found to be offspec (Aluminium + Silicon content Result 118 mg/kg against 60 mg/kg limit), owners technical department strongly protest use of this fuel and has determined it is too dangerous for transatlantic passage. Head owners therefore place charterers on notice for all cost/delays and request they arrange binding sample to be tested asap. In addition, please note the vessel does not have sufficient MGO / old good fuel to reach Rotterdam and has been instructed to drift off Florida until additional fuel is delivered and offspec fuel is debunkered to be able continue transatlantic passage.

+++

--------

Best regards,


Hristina Nikolova

Simpson | Spence | Young

Varna, Bulgaria

Mobile: +359 886 182075

E-mail: postfix@ssy.co.uk


--------

It is essential that all messages in respect of operations and/or postfixture be sent to the relevant email address (postfix@ssy.co.uk). We can accept no responsibility for delay or other consequences if messages are sent to any other email address within the company. Please ensure that all important operational/postfixture messages are followed up with a telephone call especially after office hours.

*Due to time difference please ensure that all important operational/postfixture messages are followed up with a telephone call especially after 1300 hrs New York time (UTC/GMT -4hours)*
--------
If you would like to unsubscribe from this communication please reply to this email with the word "Unsubscribe" added to the contents of the subject line.
You can view the Simpson Spence Young Privacy Policy at http://www.ssyonline.com/privacy-policy/
Part of the SIMPSON | SPENCE | YOUNG group of companies

Details of all SIMPSON | SPENCE | YOUNG group companies can be found at
http://www.ssyonline.com/registered-offices
The SIMPSON | SPENCE | YOUNG policy on international sanctions can be found at
http://www.ssyonline.com/sanctions



**Certificate of Analysis**

| | | | |
|---|---|---|---|
| **Vessel / Object:** | Kirby Inland Marine - KIRBY 27735 (1245358) | **Job No:** | 170-22-02930 |
| **Location:** | New Orleans, LA / AmSpec Lab - New Orleans, LA (United States) | **Date Sampled:** | 05/02/22 |
| **Job Type:** | Submitted Sample | **Date Tested:** | 05/02/22 |
| **Product Grade:** | Residual Fuel / Fuel Oil | **Version:** | 1 / 02 May 2022 20:20 |
| **Client Reference:** | Vitol Inc / 3651440 | | |

| **Sample** | **Sample ID, Type & Description** |
|---|---|
| 170-22-02930-001 | KIRBY 27735 SEAL # 1191919 Submitted Sample |

| **Method** | **Test** | **Min** | **Max** | **Result** | **Units** | **Remarks** |
|---|---|---|---|---|---|---|
| IP 501 | Aluminum Content | | | 9 | ppmw | |
| IP 501 | Silicon Content | | | 8 | ppmw | |

*Payton Harrison*

Reported by: Payton Harrison
Title: Laboratory Admin Technician

AmSpec LLC - 14682 Airline Highway - Destrehan - Louisiana - 70047 - EPA ID# 3960

This document is issued by the Company subject to the Terms and Conditions at https://www.amspecgroup.com/terms-conditions. Any holder of this document is advised that information contained herein reflects the Company's findings at the time and place of its intervention only and within the scope of the Client's instructions. The Company's sole responsibility is to its Client and the Company disclaims any liability to third parties. Any alteration, forgery or falsification of the content or appearance of this document is unlawful.

## Misha Paltiyevich

| | |
|---|---|
| **From:** | Deal Energy Team <team@deal-energy.com> |
| **Sent:** | Saturday, May 7, 2022 5:27 AM |
| **To:** | Nang Ngo; operation@lauritzenbulkers.dk; legal@j-l.com; Bunkers |
| **Subject:** | Re: FW: SHANGHAI // AL + SI // CLAIM |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Nang,

further to below,

We refer to our email of earlier today. Having reviewed those test results which are available owners would now propose the following:

1. That the vessel manifold sample (seal 0273936 / 0300793) and both barge external line samples (seals 1191918 and 1191919) are all subjected to full ISO 8217 table 2 testing; and

2. That upper, middle, lower and dead bottom samples are drawn from all vessel HFO tanks which contain the subject bunkers and then subject UML composite samples from each tank to full ISO table 2 testing.

Please would suppliers confirm their agreement to the above as soon as possible in order that appropriate arrangements can be made.

In the event that suppliers decline to agree the above, Owners reserve the right to draw a copy of this communication to the attention of the court or tribunal seized of the matter in the event that the dispute is litigated.

All of owners rights under the supply contract and at law remain reserved.

Your prompt reply is much appreciated.

Best regards

**Lucas Volkinsfeld**
Bunker Manager



- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com
Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

**From:** Nang Ngo <nngo@nalexenergy.com>
**Sent:** 06-05-2022 17:24:10
**To:** team@deal-energy.com <team@deal-energy.com>,operation@lauritzenbulkers.dk
<operation@lauritzenbulkers.dk>,legal@j-l.com <legal@j-l.com>,Bunkers <Bunkers@nalexenergy.com>
**Subject:** RE: FW: SHANGHAI // AL + SI // CLAIM

Hi Lucas,

Per operational standard, vessel representative was invited to witness gauging and sampling prior to this delivery. As you can see from highlighted section of BDN below, ships representative declined to witness gauging and sampling on this delivery. There were no restriction for COVID or any other cause, ships representative chose not to witness.



V-Marine Fuels

MARINE FUEL DELIVERY RECEIPT

VITOL INC • 2925 Richmond Ave. • Houston, TX 77098
telephone (713) 230-1111 • fax (713) 230-1008 • email CASHCONFIRMSHOU@VITOL.COM

| VESSEL NAME: SHANGHAI | IMO #: 9220788 | BARGE NAME: Kirby 27735 | DATE: 4-25-22 |
| LOADING TERMINAL LOCATION: ImH St Rose | | DELIVERY LOCATION: nola 9mile Anch, m/b 82.9 | |

| PRODUCT | GROSS BBLS | NET BBLS | WEIGHT M. TONS |
|---|---|---|---|
| VLSFO | | 1759.88 | 260.4) |

PROPERTIES

| GRADE | VISCOSITY CST AT 50°C/122°F | API AT 15°C | DENSITY AT 15°C | TEMP °F | FLASH °F | POUR °F | WATER %Vol. | SULPHUR %M/M | | DATE | TIME |
|---|---|---|---|---|---|---|---|---|---|---|---|
| VLSFO | 20.92 | 20.2 | 932.2 | 76.5 | >230 | | 0.05 | 0.4985 | BARGE ALONGSIDE | 4-25 | 1415 |
| | | | | | | | | | HOSE CONNECTED | 4-25 | 1535 |
| | | | | | | | | | STARTED PUMPING | 4-25 | 1550 |
| | | | | | | | | | FINISHED PUMPING | 4-25 | 1815 |
| | | | | | | | | | HOSE DISCONNECTED | 4-25 | 1855 |
| | | | | | | | | | BARGE AWAY | 4-25 | 1905 |

The marine fuel described herein is delivered in accordance with Vitol Inc.'s Standard Terms and Condition of Sale (a copy of which has been provided to buyer prior to delivery) and on credit of the vessel. Any disclaimers as to the creation of a maritime lien in the amount of the purchase price and delivery charges and/or restrictions as to the authority of the ship's officer signing this Receipt to bind the vessel and her owner to the above are null and void, unless an authorized representative of Vitol Inc. shall have otherwise agreed in writing at the time Buyer initially orders the marine fuel. Failing such agreement, delivery shall, under no circumstances, constitute a waiver by Vitol Inc. of the above.

REMARKS:

| BARGE SAMPLE (SUPPLIER): | SEAL # 1191919   1191920 |
| BARGE SAMPLE (VESSEL): | SEAL # 1191918 |
| MARPOL ANNEX VI SAMPLE: | SEAL # 1191917 |
| SAMPLES GIVEN TO CUSTOMER | ☑ YES    ☐ REFUSED |

GAUGES WITNESSED BY SHIP'S REPRESENTATIVE
☐ BEFORE    ☐ AFTER    ☑ DECLINED

DELIVERING COMPANY: Kirby Inland
BY: Barge Kirby 27735
DATE: 4-25-22

SUPPLIER'S DECLARATION
Declaration that bunker fuel supplied conforms with MARPOL Annex-VI
We declare that the bunker fuel supplied conforms with Regulation 18.3 of this Annex and that the Sulphur content of the fuel oil supplied does not exceed: Please mark (x) in the applicable box(es) below:
☑ the limit value given by Regulation 14.1 of this Annex;
☐ the limit value given by Regulation 14.4 of this Annex; or
☐ the purchaser's specified limit value of (%m/m), as completed
by the fuel oil supplier's representative and on the basis of the purchaser's 0.50
notification that the fuel oil is intended to be used in compliance with MARPOL Annex VI.

For _____   VITOL INC.

DECLARATION OF MASTER/CHIEF ENGINEER
I declare that the information given above is true and correct to the best of my knowledge and belief; that I have knowledge of the facts set forth herein; that the articles described in this notice of lading were received in the quantities stated, from the person, and on the date, indicated above; that said articles were laden on the vessel named above for use as said vessel as supplies, except as noted below.

Received for use as bunkers, together with representative sample, the quantities shown above. Exact quantities shown are subject to correction in case of error.

MASTER/CHIEF ENGINEER:
DATE: 4-25-22   DE RODOLFO GUILLAMES JR

Company's Name
Signature of Cargo Officer
John Bullock
Full Name in Block Letters
M/V UNCLE SAM
Bunker Tanker's Stamp
official # 1242720

White (office)   Yellow (office)   Pink (office)   Gold (ship)



Nang Ngo

nngo@nalexenergy.com
ICE: Nngo1
713.960.6656 OFFICE
832.461.7889 MOBILE

Nalex Energy, LLC
4265 San Felipe St. 1100
Houston, TX 77027

All offers are basis seller's GT&C's

**From:** Deal Energy Team <team@deal-energy.com>
**Sent:** Friday, May 6, 2022 9:17 AM
**To:** Nang Ngo <nngo@nalexenergy.com>; operation@lauritzenbulkers.dk; legal@j-l.com; Bunkers <Bunkers@nalexenergy.com>
**Subject:** Re: FW: SHANGHAI // AL + SI // CLAIM

Hi Nang,

Could yo please revert to my last?

Furthermore, could you also please advise if there are any COVID related restrictions during the bunkering? E.g. would the vessels crew be able to witness the sampling or is that not allowed due to COVID restrictions?

What are the regulations there in general?

Pleased to hear.

Best regards

**Lucas Volkinsfeld**
Bunker Manager

**DeaL ENERGY A/S**

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com

3

Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

---

**From:** J. Lauritzen A/S
**Sent:** 06-05-2022 09:40:46
**To:** Nang Ngo <nngo@nalexenergy.com>,operation@lauritzenbulkers.dk <operation@lauritzenbulkers.dk>,legal@j-l.com <legal@j-l.com>,Bunkers <Bunkers@nalexenergy.com>
**Subject:** Re: FW: SHANGHAI // AL + SI // CLAIM

Dear Nang,

kindly note attached test results from owners re-testing and their comments below.

*
Further to our last results from 2nd sample tested has returned confirming fuel supplied by charterers is offspec. Without prejudice, to mitigate loses and not jeopardize safety of the vessel owners have placed a stem for 250 mt of vlsfo in freeport, initial advise from bunker broker is earliest delivery for the 8th.

Please find attached analysis results from SHANGHAI 2nd sample from Ship's Manifold: Al 50 + Si 52 = 102 (off-spec).
**

Please revert with your comments.

Best regards

**Lucas Volkinsfeld**
Bunker Manager

**DEALENERGY A/S**

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com
Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

**From:** Nang Ngo <nngo@nalexenergy.com>
**Sent:** 03-05-2022 15:42:32
**To:** team@deal-energy.com <team@deal-energy.com>,operation@lauritzenbulkers.dk <operation@lauritzenbulkers.dk>,legal@j-l.com <legal@j-l.com>,Bunkers <Bunkers@nalexenergy.com>
**Subject:** RE: FW: SHANGHAI // AL + SI // CLAIM

Hi Lucas, Gulsby is the name of the packaging company that provides the Marpol compliant bottles and seals, Gulsby Packaging Company (link below). If you ask vessel to send a picture of the bottle that they received, they will have the same bottle and seal.



https://fuelsamplebottles.com/



Nang Ngo

nngo@nalexenergy.com
ICE: Nngo1
713.960.6656 OFFICE
832.461.7889 MOBILE

Nalex Energy, LLC
4265 San Felipe St. 1100
Houston, TX 77027

All offers are basis seller's GT&C's

5

**From:** Deal Energy Team <team@deal-energy.com>
**Sent:** Tuesday, May 3, 2022 3:42 AM
**To:** Nang Ngo <nngo@nalexenergy.com>; operation@lauritzenbulkers.dk; legal@j-l.com; Bunkers <Bunkers@nalexenergy.com>
**Subject:** Re: FW: SHANGHAI // AL + SI // CLAIM

Dear Nang,

attached received, however we note that the Amspec report says on the sample ID - Kirby 27735 Seal #1191919, the pictures although their are named 1191919 show a seal of Gulsby #1191920, see picture nr. 5.

Could you please elaborate on the mismatch?

Best regards

**Lucas Volkinsfeld**
Bunker Manager

**DEAL ENERGY A/S**

- As agents only

DeaL Energy A/S
15, Tuborg Havnevej • 2900 Hellerup • Denmark
Tel: + 45 3396 8027 • Mobile: + 45 2840 7653
E-mail: team@deal-energy.com
Skype: lucas.volkinsfeld
ICE: lucvolkinsfe

*The information contained in this message, including attachments, may be privileged and confidential and is intended for the use of the individual or entity to whom it is addressed.*

**From:** Nang Ngo <nngo@nalexenergy.com>
**Sent:** 03-05-2022 06:15:20
**To:** Deal Energy Team <team@deal-energy.com>,operation@lauritzenbulkers.dk <operation@lauritzenbulkers.dk>,legal@j-l.com <legal@j-l.com>,Bunkers <Bunkers@nalexenergy.com>
**Subject:** FW: SHANGHAI // AL + SI // CLAIM

Dear Lucas:

Please find pictures before/after seal break along with final and binding Amspec lab results for Al+Sil test performed on the official retain sample from delivery to your vessel Shanghai in New Orleans.  Aluminum test

result came back 9PPM and Silicone came back 8PPM, total catfines 17PPM. We therefore consider buyer's quality claim rejected and fully closed.

As discussed, we have supplied this fuel to several other vessels prior to delivery to the Shanghai and have received zero quality claims. We are confident that fuel supplied to the Shanghai is indeed on spec and safe for marine engine consumption.



Nang Ngo

nngo@nalexenergy.com
ICE: Nngo1
713.960.6656 OFFICE
832.461.7889 MOBILE

Nalex Energy, LLC
4265 San Felipe St. 1100
Houston, TX 77027

All offers are basis seller's GT&C's

---

**From:** John Jolliff <John.Jolliff@amspecgroup.com>
**Sent:** Monday, May 2, 2022 8:29 PM
**To:** Nang Ngo <nngo@nalexenergy.com>; Ann Marie Hanley <aeh@Vitol.com>; Shawn Cruse <scruse@nalexenergy.com>; Nola Fuel Oil Ops <NolaFuelOilOps@amspecgroup.com>
**Cc:** Bunkers <Bunkers@nalexenergy.com>
**Subject:** RE: SHANGHAI // AL + SI // CLAIM

Please see the attached completed requested analysis on the sealed KIRBY 27735 SEAL # 1191919 sample.


John
504-421-0504

**Best Regards,**




**John Jolliff**

**Fuel Oil Supervisor  | NOLA Operations**

AmSpec LLC
14682 Airline Hwy.

Destrehan LA, 70047 - USA

Tel:          +1.504.467.4900

Dir:          +1.985.307.1474

Mobile:     +1.504.421.0504

✉:          nolaoperations@amspecgroup.com
✉:          john.jolliff@amspecgroup.com

-------- Original message --------
From: John Jolliff <John.Jolliff@amspecgroup.com>
Date: 5/2/22 11:18 (GMT-06:00)
To: Nang Ngo <nngo@nalexenergy.com>, Ann Marie Hanley <aeh@Vitol.com>, Shawn Cruse <scruse@nalexenergy.com>, Nola Fuel Oil Ops <NolaFuelOilOps@amspecgroup.com>
Cc: Bunkers <Bunkers@nalexenergy.com>
Subject: RE: SHANGHAI // AL + SI // CLAIM

Confirming samples w/ seal #'s 1191919 & 1191920 were retrieved.

Please see the attached requested pictures.

Reverting with AL & SI.

John
504-421-0504

**Best Regards,**



**John Jolliff**

**Fuel Oil Supervisor  | NOLA Operations**

AmSpec LLC
14682 Airline Hwy.

Destrehan LA, 70047 - USA

Tel:        +1.504.467.4900

Dir:        +1.985.307.1474

Mobile:    +1.504.421.0504

✉:    nolaoperations@amspecgroup.com
✉:    john.jolliff@amspecgroup.com



**Nalex Energy**
4265 San Felipe st. 1100
Houston TX. 77027
Tel: 713-960-6656
Bunkers@nalexenergy.com

| Attention: | KASPER DUE ANDERSEN |
|---|---|
| To | LAURITZEN BULKERS A/S |
| | Tuborg Havnevej 15 |
| | 2900 Hellerup |
| | DENMARK |

| Invoice Number | N121164 |
|---|---|
| Invoice Date | 5/6/2022 |
| Due Date | 5/25/2022 |

| Vessel | SHANGHAI | IMO 9220988 |
|---|---|---|
| Delivery Date | 4/25/2022 | |
| Delivery Location | NEW ORLEANS | |
| Delivery Method | BARGE | |

**PRICING**

| | Spec | QTY Delivered | Unit Price | UOM | Fuel Total |
|---|---|---|---|---|---|
| PRODUCT | VLSFO .5% ISO 2017 | 260.410 | $900.00 | USD per MT | $234,369.00 |
| PRODUCT | | 0 | 0.0000 | $0.00 | USD per MT | $0.00 |

**BARGING & EXTRAS**

| PORT | Barging | FUEL | WHARFAGE | DOCKAGE | HARBOR | SECURITY | PORT FEE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| NEW ORLEANS | 13,081.00 | 2,354.58 | 0 | 0 | 0 | - | - | 15,435.58 |

| MISC | $ - |
|---|---|
| Federal Lust Fund | $ - |
| Federal Oil Spill | $ - |

| TOTAL DUE | $ 249,804.58 |
|---|---|

**NOTES:**

**PAYMENT DETAILS**

| In Favor Of | UMB Bank, N.A. |
|---|---|
| RTN/ABA | █████ |
| SWIFT | █████ |
| For Credit To | Nalex Energy, LLC |
| Account # | █████ |