## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **NALEX ENERGY, LLC** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | **Civ. No. 4:22-cv-01824** |
| **LAURITZEN BULKERS A/S,** | § | |
| **J. LAURITZEN (U.S.A.), INC.,** | § | **FED. R. CIV. P. 9(h)** |
| **J. LAURITZEN A/S AND** | § | **Admiralty Claim** |
| **DEAL ENERGY A/S** | § | |
| **Defendants.** | § | |

## <u>AMENDED JOINT STATUS REPORT</u>

Plaintiff/Counter-Defendant Nalex Energy, LLC ("Nalex") and Defendant/Counter-Plaintiff ("Lauritzen Bulkers A/S") submit the following information in response to the Court's Order to Report dated November 28, 2022 (Dkt. No. 20):

### I.    PROCEDURAL HISTORY

Nalex filed suit on June 3, 2022, against Lauritzen Bulkers A/S, J. Lauritzen (USA), Inc., J. Lauritzen A/S, and Deal Energy A/S for their failure to pay for marine fuels delivered to Lauritzen's chartered vessel, the M/V SHANGHAI.  Nalex asserts two breach of contract claims: (1) breach of a maritime contract for failing to pay for the marine fuels delivered; and (2) breach of a written promise to pay contingent on additional testing of the marine fuels, which returned an analysis confirming the marine fuels were of good quality.  [Dkt. No. 1, 21].

On September 7, 2022, Lauritzen Bulkers A/S, a Danish company, agreed to waive service of process pursuant to Rule 4 and file an answer in accordance with the timeframe permitted by the Federal Rules of Civil Procedure. Lauritzen Bulkers A/S also requested that Nalex dismiss the other defendants in exchange for an appropriate stipulation that it is the real party in interest to this dispute.  Nalex agreed to the stipulation.  [Dkt.23].

On November 9, 2022, Lauritzen filed its answer to Nalex's Original Complaint and its Counterclaim against Nalex, alleging the marine fuels delivered were off-specification. [Dkt. 14].

On November 23, 2022, Lauritzen filed a Third-Party Complaint against Kirby Inland Marine, LP pursuant to Federal Rule of Civil Procedure 14(c) alleging Kirby improperly sampled the marine fuels at the time of delivery.  [Dkt. 17].  On November 30, 2022, Kirby was served with the Third-Party Summons and Complaint.  (Dkt. 24). The last day for Kirby to answer or otherwise move with respect to the Third-Party Complaint is December 21, 2022.  Kirby has yet to answer or appear in this case.

On November 30, 2022, Nalex filed its First Amended Complaint ("FAC") against Lauritzen and its answer to Lauritzen's Counterclaim [Dkt. 21 and 22].

On December 16, 2022, Lauritzen answered Nalex's FAC and filed an amended Counterclaim.

## II.      STATUS OF THE CASE

### A.      Nalex's Statement

This case arises from the non-payment of marine fuels Nalex delivered to Lauritzen's chartered vessel, the M/V SHANGHAI. Nalex delivered the marine fuels

as contracted. Lauritzen contends the marine fuels delivered contained excess amounts of aluminum and silicon, thereby rendering it off-specification. Lauritzen alleges it is owed expectation damages based Nalex's alleged delivery of defective fuels. Lauritzen also seeks consequential damages, including the cost of off-loading the alleged defective fuel.

Nalex contends that upon receiving Lauritzen's quality complaint, the parties reached an agreement to jointly perform final-and-binding testing of the agreed upon fuel sample retained by Nalex to determine whether the fuel contained permissible levels of aluminum and silicon. On or about May 2, 2022, the parties' agreed to have an independent laboratory perform a final-and-binding quality analysis of the marine fuels. The laboratory analysis showed the fuel to be on-specification. Nalex also contends, in the alternative, that the contractual terms between the parties (Nalex's General Terms and Conditions), make the results of the joint analysis binding on the parties.[1]

To the contrary, Lauritzen argues that the parties did not agree to perform final-and-binding testing of the joint sample and disagrees with Nalex's interpretation of its general terms.

The parties do agree, however, that the joint testing of the fuel sample showed it to be on-specification, including with respect to the aluminum and silicon content.

---

[1] Nalex and Lauritzen agree that Nalex's 2018 General Terms and Conditions govern the parties' rights and liabilities for this dispute.

Notably, on July 26, 2022, Lauritzen paid Nalex for the marine fuels, less accrued interest, under protest and subject to a reservation of rights. Lauritzen contends that the amounts paid to Nalex are not due and owing and should be offset by the alleged damages claimed by Lauritzen.

Accordingly, Nalex contends that the parties' dispute can be distilled into two critical issues:

1) **Did Nalex and Lauritzen agree (whether by contract or a subsequent written agreement) that the May 2, 2022 fuel sample analysis is final-and-binding on the parties?**

2) **Did the fuel delivered to the SHANGHAI meet the required specifications for aluminum and silicon (ISO 8217)?**

Because the parties agree that the fuel sample tested on May 2, 2022 was on-specification, a finding in favor of Nalex on the first issue would moot the second issue. For this reason, Nalex requests the Court bifurcates the issues in this case and allow for discovery and dispositive motion practice on issue one before the parties engage in further discovery and dispositive motions on issue two.

1. **Discovery**

   i. *Issue 1*

Pursuant to Nalex's proposal to bifurcate the issues in this case, it intends to conduct discovery, including requests for production, interrogatories, and requests for admissions regarding the following:

- All correspondence related to Lauritzen's quality complaint regarding the fuel delivered to the SHANGHAI. This includes correspondence with Owners, managers, agents, suppliers, and any other third parties regarding the fuels purchased from Nalex.

- Lauritzen correspondence with the owners of the SHANGHAI regarding the fuel delivered to the SHANGHAI.

- The charterparty in place at the time of Nalex's delivery of the fuels to the SHANGHAI.

- The SHANGHAI's itinerary from January 1, 2022 to April 25, 2022.

- Any communications with other marine suppliers from January 1, 2022 to August 1, 2022 with respect to bunkers supplied to the SHANGHAI.

- Any communications and documents exchanged with Stena Oil or Pelagic Maritime Ltd. related to de-bunkering (removal of the fuel) the SHANGHAI between April 25, 2022 to the present.

- Any communications with potential salvors of the allegedly off-specification fuel.

Additionally, Nalex intends to depose a Lauritzen corporate representative and Mr. Lucas Volkinsfeld, the Bunker Manager for Lauritzen's bunkering agent DeaL Energy A/S. Mr. Volkinsfeld directly corresponded with Nalex regarding Lauritzen's quality complaint, and Nalex contends he agreed that the May 2, 2022 fuel sample analysis would be final-and-binding on the parties. Nalex reserves the right to seek additional documents, information, and depositions based on the evidence elicited by way of these initial requests. Once discovery on issue one is complete, Nalex intends to move for summary judgment to enforce the parties' agreement as to the finality of the May 2, 2022 sample analysis results.

### ii.   *Issue 2*

In the event that the Court denies Nalex's summary judgment on issue 1, Nalex intends to conduct additional discovery regarding characteristics of the fuel Lauritzen alleges it received from Nalex and Lauritzen's alleged damages. Such

discovery will include requests for production, interrogatories, and requests for admissions regarding the following:[2]

**LOG BOOKS:**

1. Deck Log Book

2. Deck Bell Book

3. Engine Room Log Book

4. Engine Room Bell Book

5. Main Engine/Telegraph movement recorder chart (Automatic Bell logger)

6. Engine Room Data Logger and Alarm Logger print-outs (specifically alarms at times of alleged damage occurrences)

7. Oil Record Book

8. Oil Transfer Book

9. Fuel/Bunkering/ECA Fuel Change Over Record Book

**RECORDS:**

10. Bunkering Records (1 year at the least)

11. Trim & Stability reports with load distribution for all port arrivals & departures

12. Bunkering Records, pre-bunkering plans, sounding records, sampling records, delivery notes

13. Inventory of fuel oil samples held on board (1 year)

14. Dry docking records (last dry-docking – specifically tank cleaning records/history)

---

[2] Lauritzen contends that the majority of the documents listed below are in the custody, possession, and control of the Owners of the M/V SHANGHAI and are not in the custody possession, and control of Lauritzen.

15. Ballast, cargo, sump, settling, service, drain, bilge, sludge & fuel oil tank internal examination records, details reports, logs, photographs

16. Details of bunker receipts from date of last cleaning of HFO tanks to subject bunkering on 25APR22 (to include copies of bunker quality reports).

17. History of HFO stowage on board from date of last cleaning of HFO tanks to 25APR22

18. Details of bunkers last contained in No.3 HFO tank (to include copy of bunker quality report)

19. Copy of bunker loading plan for bunkering on 25APR22

**FUEL OIL:**

20. Specifications

21. Sampling & analyses reports (2 year history)

**LUBE OIL:**

22. Specification

23. Sampling & analyses (2-year history)

24. Usage/make-up/storing records

**STATEMENTS/EVIDENCE:**

25. Crew statements pertaining to the incident

26. Vessel and/or Crew photographs of damages/investigations (if any)

27. Owner's reports, photographs

28. Photographs of any devices used to obtain fuel samples during bunkering operations on April 25, 2022

29. Manuals for any bunker sampling devices aboard the SHANGHAI

**CLASS:**

30. Class Survey Status, Conditions of Class & Special Memoranda

31. Class Survey reports and recommendations pertaining to the incident

7

## CASUALTY REPORTS:

32. H & M Surveyor report and/or recommendations

33. Repair & spare parts Specifications for damages

34. Repair & Spare Parts Quotations

35. US Coast Guard, Port State Control and Flag State Reports

36. Engine maker reports

## MAINTENANCE/HISTORY:

37. Main engine overhaul & calibration records for installed components

38. Main engine performance reports (current and past 1 year)

39. Auxiliary engine overhaul & calibration records for installed components

40. Auxiliary engine performance reports (current and past 1 year)

41. Engineer's Workbook

42. Electrician's Workbook

43. Spare parts orders & delivery notes for main engine

44. Monthly reports to office main & aux engine operating parameters

45. Any applicable calibration records for machinery-monitoring instruments.

46. Hand-Over Notes-all engineering ranks (1 year)

47. Service Reports for attendance of Engine Maker's representatives

48. Date of last cleaning of HFO bunker tanks.

## ISM/SMS:

49. Sections of the relevant manuals/reports relating to:

   a. bunkering & oil transfers

   b. ship & machinery performance monitoring & reporting

   c.   bilge & sludge pumping & handling

   d.   records for non-conformities

   e.   records for reporting ship & machinery performance to office

## **COMMUNICATIONS:**

50. Radio Log, faxes, telexes, e-mails, etc. pertaining to the SHANGHAI's receipt of bunkers from Nalex

51. Voyage Summaries

52. Note of Protest

## **PARTICULARS:**

53. Vessel particulars

54. Speed/Revs Curve

55. Maneuvering Speeds, Engine Room/Wheelhouse

56. Main engine control, local or remote from bridge

## **DRAWINGS:**

57. General Arrangement Plan

58. Capacity Plan

59. Tank Arrangement Plans (with piping connections)

60. Lube oil system/purifier system schematics/drawings

61. Oil Transfer/Bunkering piping System

62. Oil Sampling device & specification

63. Fuel oil system schematic

64. Bilge System

## **MANUALS TO BE MADE AVAILABLE:**

65. Purifiers

66. Fuel Treatment System

67. Main and Auxiliary Engine

## **DOCUMENT REQUESTS TO LABORATORIES**

68. Confirmation/documentation that laboratory has ISO/IEC 17025:2017 certification of similar.

69. Chain-of-Custody documentation for samples received for testing.

70. Copy of seal breaking report and/or photographs for samples received by lab.

71. Copy of lab form (lab worksheet) recording raw data for ISO 8217 testing.

72. Recorded details or brief narrative describing how samples were handled/prepared before testing.

73. For tests using IP501:

    a. Details of Aluminum standard solution (if commercial standard – lot# etc, if prepared standard – copy of lab work)

    b. Details of Silicon standard solution (if commercial standard – lot# etc, if prepared standard – copy of lab work)

    c. Confirmation as to whether or not an asking agent was added to the test portion

    d. Copy of calibration report/data if not included in raw data printout

    e. Copy of ICP-ES printout for test

## **DAMAGES**

74. Documents concerning purchase of additional bunkers

75. Documents concerning handling of allegedly contaminated fuels

76. Documents concerning efforts to sell the allegedly contaminated fuels

77. Documents concerning efforts to re-blend the allegedly contaminated fuels

78. Documents concerning proof of costs and expenses alleged to have been incurred by Lauritzen and vessel owner

In addition to the requested written discovery, Nalex will seek the depositions of the SHANGHAI's crew, corporate representatives of Lauritzen, the SHANGHAI's owner, and third-parties involved in the handling of the SHANGHAI's de-bunkering operations. Nalex also reserves the right to seek the deposition of any expert or surveyor retained by Lauritzen.

## 2.    Dispositive Motions

With respect to planned dispositive motions, Nalex anticipates filing a motion for summary judgment as to both its affirmative claims and Lauritzen's counterclaims. Pursuant to Nalex's proposed bifurcation plan, Nalex anticipates first moving for dispositive relief on Issue 1, above. Specifically, and as set forth in detail in Nalex's First Amended Complaint, Nalex and Lauritzen agreed for AmSpec to perform final-and-binding testing on sample number 1191919, drawn from the barge manifold. See Nalex's First Amended Complaint at ¶¶19-21. AmSpec's analysis of sample 1191919 confirmed that the fuel was on-specification because the cat fine levels were within permissible quantities. *Id.* Nalex is entitled to summary judgment as to the parties' agreement that the results of AmSpec's testing of sample 1191919 would govern the parties' dispute over the quality of the fuel. Nalex is also entitled to summary judgment because Lauritzen's refusal to accept AmSpec's analysis constitutes a breach of the agreed terms for this delivery and/or the parties' subsequent agreement that AmSpec's testing of sample 1191919 would be final-and-binding on the parties.

In the event the Court denies Nalex relief on Issue 1, Nalex will pursue dispositive relief on Issue 2. Nalex's General Terms and Conditions provide that "[i]*n the event of a quality complaint, Seller shall seek to agree with Buyer upon the appointment of an independent inspector to* **undertake an analysis of one of the retained samples**." Nalex's terms also dictate that "*[i]n order to determine the quality of the Product delivered,* **Seller shall be entitled to draw or cause to be drawn, samples of each delivery from Supplier's designated facilities**." The only retained samples were drawn from Nalex's "designated facilities" – the bunker barge used to deliver the fuel to the SHANGHAI. Every analysis performed on the samples taken from the barge manifold has resulted in a finding of aluminum and silicon quantities well within the permissible levels. Nalex is entitled to summary judgment on Issue 2 because the representative samples of the fuel delivered to the SHANGHAI evidence that the fuel was on-specification.

Finally, Nalex intends to seek further dispositive relief as to the limitation of liability provision limiting Nalex's maximum liability to the value of the fuel invoice ($249,804.58) and the consequential damage waiver in Nalex's General Terms and Conditions.

## B.    Lauritzen's Statement.

On November 23, 2022, Lauritzen filed a Third-Party Complaint against Kirby Inland Marine, LP ("Kirby"), pursuant to Rule 14(c), alleging Kirby improperly sampled the marine fuel that was delivered to the M/V SHANGHAI (the "Vessel"). (Dkt. 17).

Lauritzen objects to Nalex's proposal to bifurcate the discovery in this action and limit discovery (in the first instance) to whether the results in the May 2, 2022, AmSpec certificate of analysis are final and binding on the parties.  The reason for Lauritzen's objection (set forth in more detail in the Counterclaim filed in this action) is the existence of other analyses of the marine fuel that indicate it was off-specification when delivered to the Vessel.  The supporting allegations are contained in ¶¶45-51 of the Counterclaim.  (Dkt. 26).

In sum, three continuous drip samples taken at the Vessel's bunker intake manifold on the date of delivery were analyzed and indicated a cat fines content (*i.e.*, aluminum + silicon) far in excess of the permissible level under the ISO 8217 standard required by contract between the parties.  When the analyses for these three samples are compared with the analyses of the marine fuel from samples taken by Kirby from the bunker barge (including the sample analyzed by Amspec), the significant difference in the cat fines content between the Vessel manifold samples and bunker barge samples indicates that the bunker barge samples were improperly taken and/or improperly mixed.  As a result, the analyses of the bunker barge samples do not accurately represent the quality and condition of the marine fuel delivered to the Vessel because of the improper sampling and/or improper mixing of the samples.  As such, those analyses, including the May 2, 2022, analysis by AmSpec, are not final and binding on the parties.

In connection with Lauritzen's position above, the following discovery is required from Nalex and Kirby to defend Nalex' liability allegations and to support

Lauritzen's breach of warranty claim against Nalex and claims against Kirby. Therefore, Lauritzen respectfully requests the Court to order discovery to move forward without bifurcation.

The discovery sought by Lauritzen from Nalex and Kirby is listed below.

### Discovery from Plaintiff Nalex

Documents

1. Contract between Nalex and Kirby Inland Marine regarding physical delivery of marine fuel to the M/V SHANGHAI.

2. Correspondence and other documents exchanged between Nalex and Kirby Inland Marine regarding physical delivery of marine fuel to the M/V SHANGHAI.

3. Instructions and other documents given by Nalex to Kirby Inland Marine regarding physical delivery of marine fuel to the M/V SHANGHAI.

4. Instructions and other documents given by Nalex to Kirby Inland Marine and other delivery agents regarding physical delivery of marine fuel to vessels.

5. Instructions and other documents given by Nalex to Kirby Inland Marine regarding the practice and protocol of taking of samples of marine fuel delivered to the M/V SHANGHAI.

6. Instructions and other documents given by Nalex to Kirby Inland Marine and other delivery agents regarding the practice and protocol of taking of samples of marine fuel delivered to vessels.

7. Claims files from December 1, 2021, to present maintained by Nalex that relate to claims made against Nalex for the sale and delivery of marine fuel alleged to be off-specification and/or for quality claims.

8. Records showing to whom (*i.e.*, identity of buyer and vessel) marine fuel sold by Nalex was from the same batch of marine fuel delivered to the M/V SHANGHAI.

9. Records showing the storage location of the marine fuel delivered to the M/V SHANGHAI from the time of storage in the first shore tank to loading on board the Barge Kirby 27735.

10. Internal correspondence exchanged between representatives and employees of Nalex relating to the marine fuel supplied to the M/V SHANGHAI.

11. Certificates of analyses from the testing of samples of the marine fuel delivered to the M/V SHANGHAI from shore tank samples to bunker barge samples.

12. Records showing from whom Nalex purchased the marine fuel that was supplied to the M/V SHANGHAI, including but not limited to the quantity and quality of the marine fuel purchased, and certificates of analyses for the marine fuel so purchased.

Fact Witnesses – Depositions

1. Nang Ngo of Nalex

2. Rule 30(b)(6) representatives of Nalex who are most knowledgeable regarding the subject matter and content of the documents listed above under "Documents."

3. Rule 30(b)(6) representatives of Nalex who are most knowledgeable about ISO 8217.

4. Rule 30(b)(6) representatives of Nalex who are most knowledgeable about the practice and procedure for taking of samples of marine fuel delivered to vessels, including the M/V SHANGHAI.

5. Representatives of the laboratories that tested samples of marine fuel supplied to the M/V SHANGHAI.

Expert Witnesses – Depositions

1. Chemists, marine surveyors, and the like retained by Nalex in regard to the supply, sampling, and quality determination of the marine fuel to the M/V SHANGHAI.

2. Any other experts retained by Nalex.

**Discovery From Third-Party Defendant Kirby Inland Marine**

Documents

1. Contract between Nalex and Kirby Inland Marine regarding physical delivery of marine fuel to the M/V SHANGHAI.

2. Correspondence and other documents exchanged between Nalex and Kirby Inland Marine regarding physical delivery of marine fuel to the M/V SHANGHAI.

3. Instructions and other documents given by Nalex to Kirby Inland Marine regarding physical delivery of marine fuel to the M/V SHANGHAI.

4. Instructions and other documents given by Nalex to Kirby Inland Marine regarding the practice and procedure for taking of samples of marine fuel delivered to the M/V SHANGHAI.

5. Internal instructions and memoranda of Kirby Inland Marine regarding the practice and procedure for taking of samples of marine fuel delivered to the M/V SHANGHAI.

6. Internal instructions and memoranda of Kirby Inland Marine regarding the practice and procedure for taking of samples of marine fuel delivered to vessels.

7. General arrangement and capacity plans for the Barge Kirby 27735.

8. Plans for the Barge Kirby 27735 showing the location where samples of marine fuel are taken.

9. Plans for the Barge Kirby 27735 showing the location of the piping for loading and discharging and suction for the discharge piping in each tank.

10. Records showing the type and quantity of marine fuels in each of the tanks on the Barge Kirby 27735 at the time of delivery of the marine fuel to the M/V SHANGHAI.

11. Records showing the rate of discharge of the tanks on the Barge Kirby 27735 for the marine fuel delivered to the M/V SHANGHAI.

12. Records showing the identity and tank location on the Barge Kirby 27735 where the marine fuel delivered to the M/V SHANGHAI was loaded and stowed, including but not limited to the date when it was first loaded and stowed on board the barge and whether and when (dates) the marine fuel was shifted between tanks on the barge and the tanks where the shifting occurred.

13. Records generated by Kirby Inland Marine in connection with the delivery of marine fuel to the M/V SHANGHAI.

14. Claims files from December 1, 2021, to present maintained by Kirby Inland Marine that relate to claims made against Kirby Inland Marine in connection with the delivery of marine fuel to the M/V SHANGHAI and other vessels.

16

Fact Witnesses – Depositions

1. Rule 30(b)(6) representatives of Kirby Inland Marine who are most knowledgeable regarding the subject matter and content of the documents listed above under "Documents."

2. Rule 30(b)(6) representatives of Kirby Inland Marine who are most knowledgeable about ISO 8217.

3. Rule 30(b)(6) representatives of Kirby Inland Marine who are most knowledgeable about the practice and procedure for taking of samples of marine fuel delivered to vessels, including the M/V SHANGHAI.

4. Rule 30(b)(6) representatives of Kirby Inland Marine who are most knowledgeable about the procedures for loading, carrying, and delivering marine fuel bunker barges to vessels, including the Barge Kirby 27735 and the M/V SHANGHAI.

5. Bargemen on the Barge Kirby 27735 when the marine fuel was delivered to the M/V SHANGHAI.

Expert Witnesses – Depositions

1. Any expert witnesses retained by Kirby Inland Marine.

**C.    Mediation**

The parties believe mediation is premature at this time and would be more appropriate after expert discovery is concluded and before dispositive motions are filed.

## III. PROPOSED SCHEDULING ORDER

**a.    Nalex's Proposed Scheduling Order**

1. Discovery on Issue 1 must be completed by March 14, 2023. Counsel may, by agreement, continue discovery beyond the deadline.

2. All dispositive motions as to Issue 1 shall be filed by May 5, 2023.

3. Experts for Issue 2 on issues which the party has the burden of proof will be designated and a report of the expert's opinion furnished by September 14,

2023. Experts on issues which the party does not have the burden of proof will be designated and a report of the expert's opinion furnished by October 16, 2023.

4. Challenges to expert designations shall be filed by November 16, 2023.

5. All remaining discovery must be completed by November 16, 2023. Counsel may, by agreement, continue discovery beyond the deadline.

6. All dispositive motions shall be filed by December 19, 2023.

7. Pretrial requests for relief under Federal Rule of Civil Procedure 12 and any other non-dispositive motions must be filed by December 19, 2023.

8. The case shall be set for trial after the Court rules on dispositive motions or other pretrial requests for relief.

9. The Parties anticipate that the pending matters can be tried in 3-5 days.

**b.     Lauritzen's Proposed Scheduling Order**

Lauritzen objects to Nalex's Proposed Scheduling Order and proposes this schedule instead.  Lauritzen's Proposed Scheduling Order is:

Fact Discovery – deadline is June 19, 2023

Expert Reports – deadline is August 18, 2023

Expert Depositions – deadline is October 19, 2023

Dispositive Motions – deadline is December 19, 2023

NICHOLS BRAR WEITZNER & THOMAS LLP

*/s/ Kip Brar*
Kip Brar
Texas Bar No. 24067333
SDTX ID: 1055559
2402 Dunlavy Street, Suite 2000
Houston, Texas 77006
Direct: 713-405-3336
kbrar@nicholsbrar.com

18

**Attorney-in-Charge for Plaintiff Nalex Energy, LLC**

**Of Counsel:**
NICHOLS BRAR WEITZNER & THOMAS LLP

Misha J. Paltiyevich
Texas Bar No. 24095695
2402 Dunlavy Street, Suite 2000
Houston, Texas 77006
mpaltiyevich@nicholsbrar.com
Direct: 713-405-3336

*AND*

**LAURITZEN BULKERS A/S**

*/s/ Kirk M. Lyons*
Kirk M. Lyons
Admission Pro Hac Vice
Lyons & Flood, LLP
The Towers, Suite 206
111 Great Neck Road
Great Neck, NY 11021
T: (212) 594-2400

**Of Counsel:**

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P

Kevin P. Walters
Texas State Bar No.:  20818000
Fed. I.D. No. 5649
1600 Smith Street, Suite 5000
Houston, Texas 77002
T:  713.224.8380
F:  713.225.9545
kevin.walters@roystonlaw.com

## Certificate of Service

The foregoing Amended Joint Status Report was served on all counsel of record via the Court's ECF system on December 19, 2022.

*/s/ Kirk M. Lyons*