# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| NALEX ENERGY, LLC, § | | |
|     Plaintiff, § | | |
| § | | |
| VS. § | CIV. NO. 4:22-cv-01824 | |
| § | | |
| LAURITZEN BULKERS A/S, § | FED. R. CIV. P. 9(h) | |
| J. LAURITZEN (U.S.A.), INC., § | Admiralty Claim | |
| J. LAURITZEN A/S AND § | | |
| DEAL ENERGY A/S, § | | |
|     Defendants. § | | |

---

| | |
|---|---|
| LAURITZEN BULKERS A/S, § | |
|     Defendant and Third-Party § | |
|     Plaintiff, § | |
| § | |
| VS. § | |
| § | |
| KIRBY INLAND MARINE LP, § | |
|     Third-Party Defendant. | |

## KIRBY INLAND MARINE, LP'S AMENDED MOTION TO DISMISS UNDER RULE 12(b)(6)

Third-Party Defendant Kirby Inland Marine, LP ("Kirby") files this Amended Motion to Dismiss, seeking dismissal of Lauritzen Bulkers A/S's First Amended Third-Party Complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6). As Lauritzen has tendered to Kirby the complaint filed by Nalex Energy, LLC, Kirby also seeks dismissal of the First Amended Complaint for failure to state a claim for which relief can be granted against Kirby. In support of the foregoing, Kirby states as follows:

## Statement of the Nature and Stage of Proceedings

Plaintiff Nalex Energy, LLC ("Nalex") filed this lawsuit against Lauritzen Bulkers A/S ("Lauritzen")[1] to collect amounts due and owing for marine fuel bunkers provided to the vessel M/V SHANGHAI (the "Vessel") on April 25, 2021.[2] This was nothing more than a collection action for the failure to pay for the fuel. Despite clear contractual provisions that do not allow for a recovery, Lauritzen filed a Counter-Claim against Nalex Energy, LLC ("Nalex") for damages, alleging that the bunkers provided were off-specification and could not be used on board the Vessel as marine fuel.[3] Despite clear contractual provisions precluding recovery, Lauritzen also filed a Third-Party Complaint against Kirby, the owner and operator of a bunker barge that delivered the fuel for Nalex, seeking damages in connection with the allegedly off-spec bunkers and tendering Nalex's claim to Kirby as per Rule 14(c) of the Federal Rules of Civil Procedure.[4] Lauritzen alleged that Kirby improperly and negligently sampled the bunkers, and that such sampling resulted in inaccurate analyses of the contents of the bunkers.[5]

---

[1] In its Original Complaint, Nalex also sued J. Lauritzen (U.S.A.), Inc., J. Lauritzen A/S and Deal Energy A/S. (ECF Doc. 1). Only Lauritzen is named as a Defendant in Nalex's 1st Am. Complaint. (ECF Docs. 21 & 34-1).
[2] *See* Nalex's 1st Am. Compl. (ECF Docs. 21 & 34-1).
[3] Lauritzen's Answer & Counterclaim (ECF Doc. 26). Lauritzen incorporated its Answer & Counterclaim in its Third-Party Complaint (*see* ECF Doc. 17 at ¶ 1). In its Answer & Counterclaim, Lauritzen admits that (1) the bunkers were sold to Lauritzen for the Vessel subject to Nalex's terms and conditions of sale (the "T&Cs"); (2) Nalex's/Kirby's sampling and testing of the bunkers was performed in accordance with the procedures stated in the T&Cs; (3) testing revealed that the bunkers were within Lauritzen's stated specifications; and (4) Lauritzen agreed that such testing was a final and binding determination of the issue, as per the T&Cs.
[4] Lauritzen's Third-Party Compl. (ECF Doc. 17).
[5] *Id.* at ¶ 18.

In response to Lauritzen's Third-Party Complaint, Kirby filed a Motion to Dismiss Pursuant to Rule 12(b)(6),[6] and thereafter joined in Nalex's motion to dismiss Lauritzen's counterclaim against Nalex.[7] In an apparent attempt to avoid dismissal of its claims against Kirby, Lauritzen has filed a First Amended Third-Party Complaint.[8]

## Statement of the Issue

The issues to be decided are whether (1) Lauritzen's First Amended Third-Party Complaint fails to state a cognizable claim against Kirby for damages for allegedly off-specification bunkers provided to the Vessel, and (2) by virtue of Lauritzen's Rule 14(c) tender, Nalex's First Amended Complaint fails to states a cognizable claim against Kirby for damages.

## Summary of the Argument

Based on Lauritzen's own pleadings, which incorporate Nalex's First Amended Complaint as Exhibit A,[9] neither Nalex nor Lauritzen have a viable claim against Kirby based on allegedly off-specification bunkers. Although Lauritzen alleges that continuous drip samples taken by the Vessel's crew, on board the Vessel, revealed cat fines in excess of the applicable ISO specifications, the bunkers were determined to be within specifications utilizing the procedure set forth in the "Nalex Energy, LLC General Conditions of Sale and Delivery effective from September 1, 2018" (the "T&Cs").[10] Kirby,

---

[6] *See* ECF Doc. 30.
[7] *See* Kirby's Notice of Intention to Join and Adopt Nalex's Motion to Dismiss (ECF Doc. 33).
[8] ECF Doc. 34.
[9] *See* ECF Doc. 34-1.
[10] A copy of the T&Cs, filed as Ex. 3 to Nalex's 1st Am. Complaint, which is in turn attached to Lauritzen's 1st Am. Third-Party Complaint as Ex. A (*see* ECF Docs. 21-3 and 34-1), is attached hereto as Ex. A.

as both the delivery agent and servant of Nalex with respect to the delivery and supply of the bunkers to the Vessel, is entitled to assert the benefits and protections of the T&Cs as both a "Seller" and "Suppler."

As Lauritzen alleges that the bunker samples taken from the Kirby barge tested within the stated contractual specifications, Lauritzen's First Amended Third-Party Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

Nalex's First Amended Complaint likewise fails to state a claim against Kirby upon which relief can be granted and should be dismissed as to Kirby only. Nalex's First Amended Complaint seeks collection for unpaid fuel bunkers, based on theories of breach of contract, suit on a sworn account, and unjust enrichment. However, Nalex did not contract with Kirby for the provision of the bunkers and does not allege that Kirby either received the bunkers or was a beneficiary of the provision of the bunkers to the Vessel. As Kirby has no obligation to pay Nalex, Nalex's claim against Kirby should be dismissed.

## **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint meet the pleading standards of Federal Rule of Civil Procedure 8 so as to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The complaint must "state a claim to relief that is plausible on its face," with allegations sufficient to "raise a right to relief above the speculative level." *Id.* at 555, 570. Thus, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Id.* (internal quotation marks omitted). Courts need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, courts must conduct a context-specific inquiry and rely on "judicial experience and common sense" to determine if a plaintiff's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679.

## Factual Background

Nalex's First Amended Complaint seek recovery from Lauritzen of payment for fuel bunkers delivered to the Vessel under theories of breach of contract, quantum meruit, and suit on account.[11] Nalex alleges that Lauritzen (through Lauritzen's agent, Deal Energy) requested the supply of the bunkers to the Vessel via Lauritzen's Bunker Nomination.[12] In response, Nalex issued a Confirmation Order memorializing the transaction and providing that all sales were subject to the T&Cs.[13] Although Nalex (through Kirby) supplied the bunkers to the Vessel, Lauritzen breached the parties' agreement by not paying for them.[14] Kirby is not named as a Defendant in Nalex's First Amended Complaint, nor does the Complaint allege that the bunkers for which payment is sought were delivered to or received by Kirby.[15]

Lauritzen, the charterer of the Vessel, in turn filed a counter-claim and third-party complaint, asserting claims against both Nalex and Kirby for the alleged provision of off-

---

[11] *See* Nalex's 1st Am. Compl. (ECF Docs. 21 & 34-1).
[12] *Id.* at ¶ 7.
[13] *Id.* at ¶ 8.
[14] *Id.* at ¶¶ 11, 30, 32.
[15] *See generally id.*

spec bunkers purchased from Nalex and supplied by Kirby for the Vessel.[16] In its Amended Third-Party Complaint, Lauritzen avers that the bunkers supplied by Nalex (via Kirby) were supplied pursuant to a contract which included, among other things, a requirement that they "meet the international quality standards for bunkers found in ISO 8217:2017.[17] That contract is found in Exhibit A to Lauritzen's First Amended Third-Party Complaint as Exhibit 2 to Nalex's First Amended Complaint, and includes the T&Cs.[18] The T&Cs, which govern the sale of the bunkers, state the following:

- "In order to determine the quality of the Product delivered, Seller shall be entitled to draw or cause to be drawn, samples of each delivery <u>from Supplier's designated facilities</u>, and to have them sealed. Where reasonably practical, the samples shall be taken in accordance with ISO-8217, but shall otherwise be taken at a point and in a manner chosen by Seller or its representative."[19]

- "If … no agreement has been reached by the two parties, Seller reserves the right to have one [of] its retained sealed samples independently analyzed and for the results to be final and binding upon both parties."[20]
- "Unless otherwise agreed in writing by Seller, only samples provided by Seller to Buyer at the time of delivery shall be deemed representative of the Product delivered."[21]

Lauritzen asserts that "Nalex hired Kirby to physically deliver and the bunkers to the Vessel" and that the same occurred by way of Barge Kirby 27735.[22] The bunkers were

---

[16] *See* Lauritzen's Answer & Counterclaim (ECF Doc. 26) and Lauritzen's 1st Am. Third-Party Compl. (ECF Doc. 34).
[17] Lauritzen's 1st Am. Third-Party Compl., ¶ 7 (ECF Doc. 34).
[18] *See* ECF Doc. 34-1 at Ex. 3.
[19] *Id.* at Ex. 3, ¶ 5.4 (emphasis added); *see also* Nalex's 1st Am. Compl. at ¶ 12 (ECF Docs. 21 & 34-1) ("To ensure that the bunkers met ISO 8217 quality standards specified in Lauritzen's Bunker Nomination and to resolve any potential quality disputes, Kirby's barge tankerman collected a primary sample of the bunker fuel supplied to the SHANGHAI from the bunker manifold on Kirby barge 27735 (the 'barge manifold'). See Ex. 3, art 5.4.").
[20] *See* ECF Doc. 34-1 at ¶ 5.5.
[21] *Id.* at ¶ 5.6
[22] Lauritzen's 1st Am. Third-Party Compl. at ¶ 9 (ECF Doc. 34).

-6-
A0612\455873\269415141.v1-12/15/22

required to meet the international quality standards found in ISO 8217:2017, and the "maximum permissible content for cat fines under the ISO 8217:2017 international quality standard is 60 mg/kg."[23] Lauritzen states that "samples of the bunkers being delivered to the Vessel were taken by a Kirby barge tankerman while aboard Barge Kirby 27735 and the seal numbers for the samples taken were written on the MFDR [Marine Fuel Delivery Receipt]."[24] While the bunkers were being delivered to the Vessel, the Vessel's crew independently collected samples from the Vessel's bunker inlet manifold by continuous drip method.[25] Testing on the drip samples collected by the Vessel's crew allegedly revealed cat fine levels in excess of the 60 mg/kg permitted by ISO 8217:2017.[26]

Following its complaint to Nalex that the bunkers were off-specification, AmSpec tested a "supplier" sample listed on the MFDR, bearing seal number 1191919.[27] This is the sample that was taken from the sampling point on the barge, which was contemplated by the T&Cs.[28] AmSpec's testing of the sealed sample from the Kirby barge revealed cat fine levels of 17 ppm, far below the maximum permitted by the applicable ISO standard and as per the T&Cs.[29] Lauritzen admits that other bunker samples from the Kirby barge were analyzed, and that the results were below the maximum permitted by the applicable ISO standard.[30]

---

[23] *Id.* at ¶ 8.
[24] *Id.* at ¶ 10.
[25] *Id.* at ¶ 11.
[26] *See id.* at ¶ 12.
[27] Nalex's 1st Am. Compl., ¶ 17 (ECF Docs. 21 & 34-1).
[28] *Id.* at ¶ 18.
[29] *Id.* at ¶ 21 ("AmSpec's analysis of sample number 1191919 confirmed that the cat fines levels were within permissible quantities."); *see also* Lauritzen's 1st Am. Third-Party Compl., ¶ 14 (ECF Doc. 34).
[30] Lauritzen's 1st Am. Third-Party Compl., ¶¶ 14-15 (ECF Doc. 34).

## Argument

### A. Lauritzen's Claims Against Kirby Should Be Dismissed

Nalex's T&Cs, which are part of the contract between Nalex and Lauritzen "govern the parties' rights with respect to the subject bunker delivery."[31] The T&Cs expressly provide that the Seller [Nalex and its representative]—not Lauritzen—has the right to determine where to take the bunker samples to be used for testing in the event of an issue.[32] Moreover, the T&Cs are clear that the samples are to be taken "from Supplier's designated facilities."[33] The T&Cs define "Supplier" as "the party physically supplying the Products and/or Services to the Vessel."[34] As Lauritzen alleges that Kirby physically supplied the bunkers to the vessel via Barge Kirby 27735,[35] the samples for testing must come from Kirby's facilities (*i.e.*, from the Kirby barge), not from the Vessel. Nalex avers that Kirby took the barge samples "to resolve any potential quality disputes," in accordance with Section 5.4 of the T&Cs.[36] Thus, the samples collected by the Kirby tankerman are controlling as per the T&Cs, and the samples collected by the Vessel's crew have no bearing on the contract of sale. Per the T&Cs, made part of the contract between Nalex and Lauritzen, testing of the samples collected by Kirby from the barge are "final and binding"

---

[31] *See* Nalex's 1st Am. Compl., ¶ 9 & Ex. 3 (ECF Docs. 21-3 & 34-1).
[32] Exhibit A at ¶ 5.4 ("In order to determine the quality of the Product delivered, Seller shall be entitled to draw or cause to be drawn, samples of each delivery from Supplier's designated facilities, and to have them sealed. Where reasonably practical, the samples shall be taken in accordance with ISO-8217, but shall otherwise be taken from a point and in a manner chosen by Seller or its representative.")
[33] *Id.*
[34] *Id.* at ¶ 1.8.
[35] Lauritzen's 1st Am. Third-Party Compl., ¶ 9 (ECF Doc. 34).
[36] *See* Nalex's 1st Am. Compl., ¶ 12 (ECF Docs. 21 & 34-1).

on the parties to the agreement;[37] that testing revealed that the bunkers were within the stated specifications, as alleged by Lauritzen.[38]

The T&Cs inure not only to the benefit of Nalex, but also to the benefit of Kirby. As defined by the T&Cs, "Seller" includes the servants, sagents and designated representatives of Nalex.[39] Both Nalex and Lauritzen allege that Kirby acted as the delivery agent for Nalex in the provision of the bunkers in question.[40] Kirby, therefore, is entitled to assert all rights of a Seller under the T&Cs. As the results of the testing of the sample collected by Kirby are final and binding as between Lauritzen (the "Buyer") and Nalex and Kirby (each as a "Seller"), Lauritzen cannot maintain a claim against Kirby for off-spec bunkers.

Finally, Lauritzen is limited to the contractual remedies provided under the T&Cs, and cannot maintain a claim for damages based in tort, as per the following provision:

> The Seller and/or Supplier shall not be liable for any special, indirect, consequential, punitive or exemplary damage of any kind including but not limited to loss of prospective profits, anticipated cost savings, contracts or financial or economic loss, **claims in tort including negligence of the Seller and/or Supplier**, its agents, servants or sub-contractors, arising out of, or in connection with, the performance or nonperformance under the Contract. **In any event, the liability of the Seller and/or Supplier shall be limited to the price of the Products supplied under the Contract**.[41]

---

[37] Exhibit A at ¶ 5.5 ("If, after 21 calendar days from the date that Buyer registers a quality complaint to Seller, no agreement has been reached between the two parties, Seller reserves the right to have one of its retained sealed samples independently analyzed and for the results to be final and binding upon both parties.").
[38] *See* Lauritzen's 1st Am. Third-Party Compl., ¶¶ 14-15.
[39] *Id.* at ¶ 1.1.
[40] Nalex's 1st Am. Compl., ¶ 11 (ECF Doc. 21); Lauritzen's Third-Party Compl. at ¶ 9 (ECF Doc. 17).
[41] Ex. A at ¶ 14.1 (emphasis added).

Based on the foregoing, Lauritzen has failed to state a claim against Kirby on which relief can be granted, and Kirby is entitled to dismissal.

B. **Nalex's Claims Against Kirby Also Should Be Dismissed**

In its First Amended Third Party Complaint, Lauritzen demanded judgment in favor of Nalex against Kirby as contemplated by Rule 14(c)(2). Although it makes little sense for Kirby to have to defend against a collection action complaint targeting Lauritzen, Kirby must do so since "the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff." See Rule 14(c)(2). Since Kirby did not receive or order the bunkers, Nalex has alleged no viable claim against Kirby—in fact, Nalex has <u>no</u> claim against Kirby at all for the matters identified in its complaint against Lauritzen. Nalex alleges that it entered into a maritime contract with Lauritzen for provision of the bunkers.[42] Kirby is not alleged to have received the fuel for which Nalex seeks payment. Additionally, Kirby is not alleged to be the charterer of the Vessel or other beneficiary with respect to Nalex's claim for unjust enrichment.

Accordingly, Nalex also has failed to state a claim against Kirby on which relief can be granted, and Kirby is entitled to dismissal of Nalex's claim vis-a-vis Kirby only.

## Conclusion and Prayer

Lauritzen bound itself to the T&Cs at the time it contracted with Nalex for the provision of bunkers for the Vessel, and the terms of those T&Cs inure to the benefit of Kirby. As shown above, Nalex and Kirby had a right to sample the bunkers in the manner

---

[42] *See* Nalex's 1st Am. Compl., ¶ 6 (ECF Doc. 21).

chosen, from Kirby's facilities, and such samples were controlling with respect to the quality of the bunkers. AmSpec independently tested the sample, and the results of that testing revealed that the bunkers were within the stated specifications. That finding is final and binding as between the parties. Kirby, who Nalex admits is its agent, and who Lauritzen admits delivered and supplied the bunkers on behalf of Nalex, is both a "Seller" and a "Supplier" under the T&Cs and has standing to assert those provisions on its own behalf. In short, the T&Cs and the results of the testing are binding on Lauritzen, and it cannot now claim that the bunkers are off-spec or seek remedies against Kirby beyond those identified in the T&Cs. Lauritzen has further waived any tort claims against Kirby arising in connection with the provision of the bunkers. Lauritzen's claim against Kirby should be dismissed in its entirety.

Nalex has alleged no claim for which Kirby is or might be liable to Nalex for the provision of the bunkers and, therefore, Nalex's claims for payment should likewise be dismissed in their entirety as to Kirby.

Kirby Inland Marine, LP requests that this Court grant its Amended Motion to Dismiss under Rule 12(b)(6), dismiss Third-Party Plaintiff Lauritzen's First Amended Third-Party Complaint in its entirety as to Kirby, and dismiss Plaintiff Nalex's First Amended Complaint in its entirety as to Kirby, only. Kirby seeks such other and further relief to which it may be justly entitled.

A0612\455873\269415141.v1-12/15/22

By: */s/ David James*
**David James**
State Bar No. 4032467
djames@clarkhill.com
**Clark Hill PLC**
2615 Calder Avenue, Suite 240
Beaumont, Texas 77702-1986
Telephone: (409) 351-3800
Facsimile: (409) 351-3883

**Attorney-in-Charge for Third-Party Defendant Kirby Inland Marine, LP**

OF COUNSEL:

**Katherine T. Garber**
State Bar No. 07626985
kgarber@clarkhill.com
**Clark Hill PLC**
909 Fannin Street, Suite 2300
Houston, Texas 77010
Telephone: (713) 951-5600
Facsimile: (713) 951-5665

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this 7th day of February, 2023, served a copy of the foregoing on all counsel of record via CM/ECF.

*/s/ David James*
David James

-12-
A0612\455873\269415141.v1-12/15/22